IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNY OBERMILLER, | ) | |
| | ) | CASE NO. 1:19 CV 2193 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| TIM SHOOP, Warden, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Respondent. | ) | **AND ORDER** |
| | ) | |

### INTRODUCTION

Petitioner Denny Obermiller was convicted and sentenced to death by a three-judge panel in an Ohio state court for the rape and aggravated murder of his grandmother, Candace Schneider, and the aggravated murder of his grandfather, Donald Schneider.  Obermiller has filed a petition and amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentence.  (Docs. 25, 44.)  Respondent Warden Tim Shoop has filed a return of writ to the amended petition.  (Doc. 47.)  And Obermiller has filed a traverse (Doc. 58), to which Respondent has replied (Doc. 66).  For the reasons stated below, Obermiller's petition is denied.

## FACTUAL HISTORY

The Ohio Supreme Court set forth the following facts underlying Obermiller's convictions and sentence:

{¶ 3} Because Obermiller pleaded guilty, the trial court held a hearing before a three-judge panel pursuant to R.C. 2945.06. The state presented 22 witnesses, one additional witness later testified at the panel's request, and the state introduced a large amount of documentary and photographic evidence, which established the following facts.

### The Evidence

{¶ 4} Shortly before noon on Tuesday, August 10, 2010, Officer Michael Gazer was dispatched to the Schneiders' house in Maple Heights, Ohio, in response to a theft complaint. Donald and Candace told Gazer that they suspected Obermiller of stealing rare coins from their home.

{¶ 5} Later that day, Candace went to her job at a gas station in Garfield Heights. Candace closed the store around 11:45 p.m. Candace was scheduled to work the next day, August 11, but she did not come in. The manager of the gas station received a telephone call on August 11 from a male who identified himself as Candace's nephew. The caller said that Candace would not be coming to work that day because her husband was in the hospital.

{¶ 6} Candace Flagg, one of the Schneiders' granddaughters, became concerned when her grandmother did not call her on Flagg's birthday, as was her grandmother's custom. On August 13, 2010, after attempting to call the Schneiders many times and getting no answer, Flagg contacted a number of family members in an effort to locate Candace, but they all told her that they had not heard from the Schneiders. When Flagg called Candace Schneider's workplace, she was told that Candace was at a hospital with Donald. Flagg called several area hospitals, but she could not find her grandparents. Flagg also contacted her cousin, Obermiller, who told her that he would try to check on the Schneiders and get back to her. Obermiller did not call her that evening.

{¶ 7} The next day, Flagg called Obermiller again. Obermiller initially told her that he had not yet stopped by the Schneiders' house. But when Flagg said that she was going to ask some friends to check on the Schneiders, Obermiller changed his story and told her that their grandparents were fine and that he had checked on them. After calling several other people, Flagg contacted the Maple Heights Police Department and requested that an officer stop by her grandparents' house. Flagg was subsequently informed that an officer had driven past the house and had seen Donald's van parked in the driveway.

2

{¶ 8} In the early evening on August 14, 2010, Maple Heights police returned to the Schneiders' house to conduct a welfare check at Flagg's request. After knocking on the front door and ringing the doorbell, officers looked through a partially open window, saw a body lying on the floor, forced their way in through the side door, and smelled a strong odor of natural gas. A candle was burning on the mantle in the living room, and the unlit gas stove in the kitchen had been left on with the burners exposed. One of the officers threw the candle out the door and turned off the gas stove.

{¶ 9} Officers found Candace's body in the first-floor bedroom. She was lying on her back on the floor with her arms above her head and her wrists handcuffed together. A power cord was wrapped around her neck, and a bed sheet partly covered her torso and completely covered her face. Police recovered condom wrappers and two used condoms in the same bedroom.

{¶ 10} Officers found Donald's body on the bed in the second-floor bedroom. He was wearing only underwear and was lying on his right side with his feet at the head of the bed. Donald's hands were handcuffed behind his back, a bed sheet was tied around his face and neck, and a comforter covered most of his body. An investigator noted that the positioning of his body could indicate that a struggle had occurred. A telephone cord had been yanked from the wall in Donald's bedroom and was wrapped around his body.

{¶ 11} Detective Allen Henderson of the Maple Heights Police Department and his partner arrived on the scene soon after a dispatcher notified them of the double homicide. Henderson testified that as they walked through the house, his partner had remembered that a theft complaint had come in from the same residence a few days earlier and that Donald, who had made the report, had suspected that Obermiller was the culprit.

{¶ 12} Investigators noted that the burner caps and grates had been removed from the gas stove in the kitchen. An investigator observed that a television set was missing from above the mantle in the living room, as indicated by a dust outline and hanging cables. Flagg testified at the hearing that her grandparents owned a large, flat-screen television set, which they had mounted above the mantle in the living room.

{¶ 13} Deputy Coroner Jimmie K. Smith, M.D., conducted Candace's autopsy on August 15, 2010. There was mild hemorrhaging of Candace's neck due to the ligature around it, bruising on the back of her left hand and the inside of her left knee, diffuse hemorrhaging in the scalp tissue immediately adjacent to her skull, and an abrasion on her forehead. Dr. Smith testified that all of the injuries could have occurred during her strangulation, although the bruise on her hand could have been a defensive wound. Dr. Smith opined that the scalp wound was consistent with blunt-force trauma to the head from an object having a flat or rounded surface. Dr. Smith concluded that the cause of death was "asphyxia by cervical compression (ligature strangulation)." Based upon decompositional changes and police reports, he estimated that Candace died approximately four days before he examined her.

{¶ 14} Dr. Smith found no indication of vaginal trauma, but vaginal smears tested positive for the presence of spermatozoa. Subsequent forensic testing of vaginal swabs, performed by an analyst with the DNA department of the Cuyahoga County Coroner's Office, confirmed the presence of seminal material containing DNA that matched Obermiller's DNA profile as a major contributor to a reasonable degree of scientific certainty. Obermiller also could not be excluded as the source of epithelial cells found in the two used condoms.

{¶ 15} Deputy Medical Examiner Joseph Felo, D.O., conducted Donald's autopsy and concluded that the cause of Donald's death was the same as Candace's: "asphyxia by cervical compression (ligature strangulation)." Dr. Felo also found a nonfatal sharp-force injury underneath the right side of Donald's jaw, which he classified in the autopsy report as a "stab wound" because it was deeper than it was wide. Dr. Felo opined at the evidentiary hearing that it was also possible that the injury may have been caused by a discharge at close range from a "starter pistol type of handgun" that police had recovered when Obermiller was apprehended.

{¶ 16} On August 15, 2010, one of Obermiller's relatives informed police that Obermiller had contacted him and was driving to the relative's home at Buckeye Lake. Police officers subsequently located Obermiller at a gas station in Licking County and arrested him after a brief foot chase.

*State v. Obermiller*, 147 Ohio St. 3d 175, 176-78 (Ohio 2016).

These factual findings "shall be presumed to be correct," and Obermiller has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## PROCEDURAL HISTORY

### A.  State-Court Proceedings

#### 1.  Trial

On September 17, 2010, a Cuyahoga County grand jury indicted Obermiller on seven counts of aggravated murder.  (Doc. 30-1 at 21-43.)[1]  Counts 1 and 4 charged Obermiller with the

---

[1] For ease of reference, all citations to page numbers of documents filed in the Court's electronic court filing system ("ECF") are to the ECF-assigned page numbers of the individual documents, not to the documents' original page numbers or the ECF "PageID" numbers.

aggravated murders of Donald and Candace, respectively, with prior calculation and design (Ohio Rev. Code § 2903.01(A)).  (*See* Doc. 30-1 at 21-22, 26-27.)  Both counts included death-penalty specifications for course of conduct (Ohio Rev. Code § 2929.04(A)(5)), murder to escape detection (Ohio Rev. Code § 2929.04(A)(3)), witness murder (Ohio Rev. Code § 2929.04(A)(8)), and felony murder predicated on aggravated robbery, kidnapping, and aggravated burglary (Ohio Rev. Code § 2929.04(A)(7)).  (*See* Doc. 30-1 at 21-22, 26-27.)  Count 4 also contained a death-penalty specification for felony murder predicated on rape (Ohio Rev. Code § 2929.04(A)(7)).  (Doc. 30-1 at 27.)  Counts 2 and 3 charged Obermiller with the felony murder of Donald while committing aggravated robbery and aggravated burglary, respectively (Ohio Rev. Code § 2903.01(B)).  (Doc. 30-1 at 23-25.)  Each count included the same six death-penalty specifications included in Count 1.  (*Id*.)  Counts 5, 6, and 7 charged Obermiller with the felony murder of Candace while committing aggravated robbery, aggravated burglary, and rape, respectively (Ohio Rev. Code § 2903.01(B)), and each count included the same seven death-penalty specifications contained in Count 4.  (Doc. 30-1 at 28-33.)

Obermiller also was charged with twelve noncapital charges, including three counts of theft, two counts of kidnapping, two counts of aggravated robbery, and one count each of rape, aggravated burglary, tampering with evidence, attempted aggravated arson, and burglary.  (*Id*. at 34-43.)  Many of these counts included prior-conviction and repeat-violent-offender specifications.  (*Id*.)

Obermiller was arraigned on September 22, 2010.  (*Id*. at 44.)  He entered a plea of not guilty to all charges.  (*Id*.)  The court assigned attorneys Kevin Spellacy and James McDonnell to represent him.  (*Id*.)

At a pretrial conference held on January 10, 2011, Obermiller – against the advice of counsel and after the court confirmed that he understood his various rights as a capital defendant, including the right to remain silent – personally addressed the court.  (Doc. 17-1 (Trial Tr.) at 210-20.)  He informed the judge that he wished to change his plea to guilty on all charges and to represent himself going forward.  (*Id*. at 220.)  The judge then conducted a brief colloquy with Obermiller, informing him that only a three-judge panel could accept his change of plea and questioning him about his counsel's representation and his own legal experience.  (*Id*. at 221-25.)  She decided that she would initiate the process for him to waive a jury trial and change his plea to guilty, but denied his request to represent himself.  (*Id*. at 224-25.)  Obermiller then signed and presented to the court a written waiver of a jury trial.  (*Id*. at 228.)  The court accepted the waiver, noting the opinion of a court-appointed psychologist for the defense that Obermiller was competent to plead guilty and waive a jury trial and was not intellectually disabled, and confirming with the defendant that he fully understood the waiver.  (*Id*. at 228-45.)

That same day, a panel of three judges was convened, and it began a hearing regarding Obermiller's change of pleas to guilty that ran into the following day.  (*Id*. at 249.)  The panel conducted an extensive colloquy with Obermiller about the change of pleas and questioned his counsel about the matter.  (*Id*. at 250-388.)  The judges ultimately found his guilty pleas were knowing, intelligent, and voluntary.  (*Id*. at 388.)

The trial then commenced, at which, pursuant to state law, the State presented evidence and the judges and parties were able to question the witnesses.  (*See id*. at 1375.)  On January 25, 2011, the panel found that the State had proven beyond a reasonable doubt that Obermiller was guilty of all counts and specifications.  (*Id*. at 1375-76.)  After the verdict was announced, defense counsel informed the panel that Obermiller wanted to waive the presentation of mitigation

6

evidence.  (*Id*. at 1391.)  The court referred him to the court psychiatric clinic for an evaluation of his competency to waive mitigation.  (*Id.* at 1400.)

The mitigation phase of the trial began on February 23, 2011.  (*See id.* at 1419.)  The court determined that, based on the opinion of the director of the court psychiatric clinic, Obermiller was competent to waive the presentation of mitigation evidence.  (*See id*. at 1495.)  Upon the State's request, the panel also merged many of the counts and declared that it would sentence Obermiller on the following charges:  Count 1 with attached specifications for course of conduct and witness murder, Count 4 with attached specifications for course of conduct, witness murder, and felony murder predicated on rape, Count 12 (rape), Count 13 (aggravated burglary), Count 15 (theft), Count 16 (theft), Count 17 (attempted aggravated arson), and Count 18 (burglary).  (*See id*. at 1491-94.)  The panel unanimously sentenced Obermiller to death on Counts 1 and 4 and to an aggregate sentence of 32.5 years on the remaining counts.  (*See id*. at 1496-99.)

### 2.  Direct Appeal to Ohio Supreme Court

Obermiller filed a notice of appeal and motion for delayed appeal with the Ohio Supreme Court on May 19, 2011.  (Doc. 30-1 at 430-47.)  The court granted the motion for delayed appeal.  (*Id*. at 448.)  He was represented at first by Linda Prucha, Jennifer Prillo, and Shawn Welch of the Ohio Public Defender's Office, then later by Kathryn Sanford and Randall Porter of that office.  (*See id*. at 508, 837.)

In his merit brief, Obermiller presented the following propositions of law, stated as:

1.  A defendant has a constitutional right to waive counsel and represent himself when the waiver is made knowingly, intelligently and voluntarily.  U.S. Const. amends. VI, XIV; Ohio Const. art. I, §§ 10, 16.

2.  A capital defendant's right to a reliable sentence is violated when the three[-]judge panel fails to properly weigh aggravating circumstances and mitigating factors in imposing a sentence of death.  U.S. Const. [a]mends. VIII, XIV; Ohio Const. [a]rt. I, §§ 9, 16.

3. The defendant's rights to a fair trial, due process and freedom from cruel and unusual punishment are violated when the trial court elicits and allows the pervasive introduction of evidence which is irrelevant, inadmissible and unfairly prejudicial. U.S. Const. amends. IV, V, VI, VIII and Ohio Const. art. I, §§ 2, 5, 9, 16. Ohio R. Evid. 401, 403, 404. O.R.C. §§ 2945.03, 2945.06.

4. The right to the effective assistance of counsel is violated when counsel's deficient performance results in prejudice to the defendant. U.S. Const. amends. VI, XIV; Ohio Const. art. I, § 10.

5. The sentence of death imposed on Obermiller was unreliable and inappropriate. U.S. Const. [a]mends. VIII and XIV; Ohio Const. [a]rt. I, §§ 9 and16 and O.R.C. § 2929.05.

6. The accused's right to due process is violated when the cumulative effect of prosecutor misconduct renders the accused's trial unfair. U.S. Const. amend. XIV; Ohio Const. art. I, §16.

7. The introduction of graphic photographs with no probative value but which are highly prejudicial violates a capital defendant's right to a fair trial, due process, and a reliable determination of guilt as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10, and 16 of the Ohio Constitution.

8. The introduction of a defendant's statement made during a custodial interrogation and without Miranda warnings violates a capital defendant's protection against self-incrimination as well as his rights to a fair trial, due process, and a reliable determination of guilt as his rights to a fair trial, due process, and a reliable determination of guilt as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10, and16 of the Ohio Constitution.

9. Ohio's death penalty law is unconstitutional. Ohio Rev. Code Ann. §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 do not meet the prescribed constitutional requirements and are unconstitutional on their face and as applied to Obermiller. U.S. Const. [a]mends. V, VI, VIII, [a]nd XIV; Ohio Const. [a]rt. I, §§ 2, 9, 10, [a]nd 16. Further, Ohio's death penalty statute violates the United States' obligations under international law.

10. The cumulative effect of trial error renders a capital defendant's trial unfair and his sentence arbitrary and unreliable. U.S. Const. amends. VI, XIV; Ohio Const. art. I, §§ 5, 16.

(Doc. 30-1 at 510-11.) The State filed an opposing brief. (*Id*. at 703-806.)

The Ohio Supreme Court affirmed the trial court's judgment on April 20, 2016. *Obermiller*,

147 Ohio St. 3d at 176. Obermiller moved for reconsideration of that judgment, which the court

denied on August 31, 2016.  *State v. Obermiller*, 146 Ohio St. 3d 1493 (Ohio 2016) (Table).  He also filed a petition for writ of certiorari in the United States Supreme Court, which was denied. *Obermiller v. Ohio*, 137 S. Ct. 836 (2016).

On November 29, 2016, Obermiller, now represented by Dennis Sipe, filed in the Ohio Supreme Court an application to re-open his direct appeal pursuant to Ohio Supreme Court Practice Rule 11.6.  (Doc. 30-1 at 931-48.)  That rule permits defendants to request to reopen the direct appeal from a judgment to present claims of ineffective assistance of appellate counsel within ninety days from issuance of the court's direct-appeal mandate, or later for "good cause." Ohio S. Ct. Prac. R. 11.06(A); *see also State v. Murnahan*, 63 Ohio St. 3d 60 (Ohio 1992).

In his reopening application, Obermiller asserted that appellate counsel were ineffective for failing to assert five claims, stated as:

1. For a defendant to knowingly and intelligently waive his right to a jury in a capital case, the three[-]judge panel or presiding judge must inform the defendant that a solitary jur[or] may preclude a death recommendation.  U.S. Const. amends. VI, VIII, and XIV; Ohio Const. art. I, §§ 9, 10[.]

2. A three[-]judge panel should acquit a defendant when it determines that the State has failed to prove his guilt beyond a reasonable doubt. U.S. Const. amend. XIV; Ohio Const. art. I, § 16[.]

3. A defendant is denied due process of law when a three[-]judge panel in a capital case adopts the role of the prosecution. U.S. Const. amend. V and XIV; Ohio Const. art. I, § 16[.]

4. Either the presiding judge (if the defendant elects a jury trial) or the three[-]judge panel (if the defendant waives his rights to a jury trial) should appoint independent counsel to present all available mitigation evidence when the defendant elects to waive the presentation of mitigation evidence. R.C. §§ 2929.03, 2929.05; U.S. Const. amend VIII; Ohio Const. art[.] I, § [1]0[.]

5. A defendant is denied the effective assistance of counsel when counsel fails to file a meritorious motion to suppress, reveals privileged information to the three[-]judge panel, and fail[s] to enter appropriate objections. U.S. Const. amends. VI, VIII, and XIV; Ohio Const. art[.] I, § 10[.]

(Doc. 30-1 at 934, 935, 936, 938, 939 (capitalization altered).)  The State opposed the motion.  (*Id.* at 950-59.)  The Ohio Supreme Court summarily denied the application on September 13, 2017. (*Id.* at 961.)

### 3.  Post-Conviction Proceedings

Obermiller, now represented by Randall Porter and Gregory Hoover of the Ohio Public Defender's Office, filed a post-conviction petition in the state trial court on March 28, 2012.  (Doc. 30-2 at 20-60.)  He submitted with the petition nearly 2,400 pages of exhibits.  (*See id.* at 61-715; Doc. 30-3; Doc. 30-4; Doc. 30-5; and Doc. 30-6 at 1-213, 217-226, 282-410, 419-53.)  Obermiller amended his petition on June 8, 2012.  (Doc. 30-6 at 231-281.)

Obermiller presented the following grounds for relief, stated as:

1. Petitioner's convictions and sentences are void or voidable because Ohio's post-conviction procedures do not provide an adequate corrective process, in violation of the [C]onstitution. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10,16, and 20.
2. Petitioner's convictions and sentences are void or voidable because they were obtained in violation of international law and treaties to which the United States is a signatory. United States Constitution, Art[icle] VI, § 1.

3. Petitioner's convictions and sentences are void or voidable because prosecutors in the State of Ohio have historically employed their discretion in capital cases in a racially discriminatory manner. Ohio [p]rosecutors have disproportionately charged African Americans with capital murder. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

4. It is Petitioner's belief that the grand jury who indicted him was drawn from a venire in which African[]Americans were disproportionately excluded. Such exclusion renders his convictions and sentences void or voidable. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

5. [Ohio's capital punishment scheme violates the United States Constitution.]

6. Petitioner's convictions and sentences are void and/or voidable because the trial prosecutors failed to provide trial counsel with exculpatory evidence. U.S. Const. [a]mends. V, VIII, IX, XIV, Ohio Const. [a]rt. I, §§ 1, 2, 5, 9, 10, 16, and 20.

7. Because of Petitioner's mental condition and the overreaching of the investigating officers, Petitioner's statement [to the police] was involuntary.

8. Petitioner's convictions and sentences are void or voidable because he was denied the effective assistance of counsel during the trial phase of his trial.

9. Petitioner's convictions and sentences are void or voidable because he did not knowingly, voluntarily, and intelligently enter his guilty plea.

10. Petitioner's convictions and sentences are void or voidable because he was not competent to waive his right to present mitigating evidence.

11. Petitioner's sentences are void or voidable because the Court failed to obtain a valid waiver from Petitioner with respect to the presentment of evidence in the mitigation phase. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

12. Petitioner's sentences are void or voidable because Petitioner was denied the effective assistance of counsel during the mitigation stage of his capital case. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, S, 9, 10, 16 and 20.

13. Petitioner's death sentence is void or voidable because he was denied the effective assistance of counsel with respect to pretrial proceedings and investigation [during] the penalty phase.

14. Petitioner's convictions and sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel and expert assistance during the mitigation stage of his capital case. The basis for this constitutional right is twofold. Pursuant to the Sixth Amendment right to effective assistance, counsel has a duty to insure that a competent mitigation evaluation is conducted. In addition, the Fourteenth Amendment creates an independent right to a competent evaluation. U.S. Const. amends. V, VI, Vlll, IX, and XIV; Ohio Const. art. l, §§ 1, 2, 5, 9, 10, 16, and 20; *Ake v. Oklahoma*, 470 U.S. 68 (1985); *Strickland v. Washington*, 486 U.S. 668 (1984).

15. Trial counsel conducted an incomplete sentencing investigation and the trier of fact did not have the benefits of all reasonable and necessary information. *See* Eighth, Ninth, and Tenth Grounds for Relief.

16. Petitioner's convictions and sentences are void or voidable because, assuming *arguendo* that none of the Grounds for Relief in this Post-Conviction Petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions as presented in the Petition in paragraphs one through one-hundred-fifty-one have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the United States and Ohio Constitutions.

(Doc. 30-6 at 236, 239, 242, 245, 248, 250, 255, 256, 258, 261, 264, 267, 270, 273, 276, 279.)  The State filed a brief in opposition.  (*Id*. at 454-576.)

The trial  court issued its finding of facts and conclusions of law and denied Obermiller's petition on February 12, 2013.  (*Id*. at 605-15.)

Obermiller filed a notice of appeal on March 13, 2013.  (*Id*. at 617-18.)  On April 26, 2013, the court of appeals *sua sponte* dismissed the appeal for lack of a final appealable order, because the parties agreed that the trial court did not resolve all of Obermiller's claims.  (*Id*. at 633.) Obermiller then filed a "Notice of Supplementation" with an attached affidavit of Dr. Bobby Miller in support of his tenth ground for relief.  (*Id*. at 718-24.)  On January 29, 2014, the trial court issued new findings of facts and conclusions of law, again denying the petition.  (*Id*. at 732-743.)

On May 27, 2014, Obermiller's counsel filed an unopposed motion and relief from order, as the Cuyahoga County Clerk had failed to inform them that the post-conviction petition had been denied.  (*Id*. at 744-48.)  On May 29, 2014, Obermiller filed a notice of appeal (*id*. at 783-84), but the appellate court again *sua sponte* dismissed the appeal "for failure to file a timely notice of appeal" (*id*. at 825).

On July 14, 2014, Obermiller filed a notice of appeal with the Ohio Supreme Court, requesting that the court accept his post-conviction appeal.  (Doc. 30-7 at 57-59.)  Obermiller asserted one proposition of law in his memorandum in support of jurisdiction: "The notice provisions contained in Ohio R. Civ. P. 58(B) and the tolling provisions contained in Ohio R. App. 4(A) govern appeals in [] post-conviction cases."  (*Id*. at 67.)  The State did not file an opposing brief, and on October 5, 2016, the Ohio Supreme Court accepted the appeal and remanded to the appellate court "for consideration of the timeliness" of Obermiller's post-conviction "appeal on the merits."  (*Id*. at 86.)

Obermiller asserted the following assignments of error in his merit brief, stated as:

1. The presiding judge abused her discretion when she denied Obermiller relief on the first ground for relief. Issue presented for review[:] Does the State of Ohio's post-conviction system provide a defendant with a meaningful system to have his constitutional challenges heard given its rigid reliance on the doctrine of res judicata and failure to provide for any meaningful factual development?

2. The presiding judge erred when she denied Obermiller's motion to reconvene the three[-]judge panel. Issue presented for review[:] When a defendant is sentenced to death by a three-judge panel, should the panel reconvene for purposes of ruling on a defendant's post-conviction petition?

3. The presiding judge abused her discretion when she denied Obermiller's post-conviction petition without affording him an opportunity to conduct discovery. Issue presented for review[:] Should a trial court afford a defendant sentenced to death the opportunity to conduct discovery pursuant to Crim. R. 42 and RC. 2953.21(C) prior to ruling on a state's motion to dismiss?

4. The presiding judge abused her discretion when she overruled the second and fifth grounds for relief. (Td. 153, pp. 4-5). Issue[s] presented for review[:] Are the provisions contained in R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 unconstitutional on their face and as applied to Obermiller in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Ohio Constitution and Art. I, §§ 2, 9, 10? Do the provisions contained in R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 violate the United States' obligations under international law?

5. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the fourth ground for relief. Issue presented for review[:] Does a violation of the Sixth and Fourteenth Amendments occur when the trial court selects the grand jury forepersons from outside the grand jury venire and the selection process results in the underrepresentation of African Americans and women? U.S. Const. [a]mends. V, VIII, IX, XIV, Ohio Const. [a]rt. I, §§ 1, 2, 5, 9, 10, 16, and 20?

6. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the sixth ground for relief. Issue presented for review[:] Does a prosecutor violate a defendant's right to due process of law when he fails to provide the defendant with favorable, material evidence? U.S. Const. [a]mends. V, VIII, IX, XIV, Ohio Const. [a]rt. I, §§ 1, 2, 5, 9, 10, 16, and 20?

7. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the eighth ground for relief. Issue presented for review[:] Are trial counsel ineffective when they fail to fully investigate the facts and circumstances of the case before advising their client about a guilty plea?

13

8. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the ninth ground for relief. Issue presented for review[:] Does a defendant knowingly, intelligently and voluntarily enter a guilty plea when a) he does not have all the relevant information concerning the strength of the State's case; and b) his mental illnesses compromised his ability to understand the consequences of such a plea?

9. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the tenth and eleventh grounds for relief. Issues presented for review[:] Can a defendant waive his right to present mitigation evidence when he is suffering from serious mental health issues and is under the influence of multiple medications, and can a court obtain a valid waiver from a defendant in those circumstances?

10. The presiding judge erred when she denied Obermiller factual development and relief on the twelfth, thirteenth, fourteenth and fifteenth grounds for relief. Issues Presented for Review[:] Is a defendant denied the effective assistance of counsel when counsel does not reasonably a) investigate mitigation during the pretrial proceedings; b) effectively use a mitigation specialist; c) investigate, prepare, and present witnesses; and d) investigate prepare, and present expert testimony?

11. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the sixteenth ground for relief. Issue presented for review[:] Can two or more constitutional errors deprive a defendant of his constitutional rights when those errors individually do not warrant the granting of relief?

(Doc. 30-7 at 145-48 (capitalization altered).)  The State filed an opposing brief.  (*Id*. at 282-355.)

The court of appeals affirmed the trial court's judgment on April 4, 2019.  *State v. Obermiller*, No. 101456, 2019 WL 1502500, at *1 (Ohio Ct. App. Apr. 4, 2019).

Obermiller filed a timely notice of appeal of the appellate court's judgment.  (*Id*. at 426-28.) In his memorandum in support of jurisdiction, he raised the following propositions of law, stated as:

1. The State of Ohio's post-conviction system, in effect at the time of the trial court's ruling on Obermiller's amended post-conviction petition, did not provide Obermiller with a meaningful system to have his constitutional challenges heard given its rigid reliance on the doctrine of res judicata and failure to provide for any meaningful factual development.

2. When a three[-]judge panel sentences a defendant to death, the panel should reconvene for purposes of ruling on a defendant's post-conviction petition.

14

3. A trial court should afford a defendant sentenced to death the opportunity to conduct discovery pursuant to Crim. R. 42 and R.C. 2953.21(C) prior to ruling on his post-conviction petition.

4. The provisions contained in R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, 2929.05 are unconstitutional on their face and as applied to Obermiller in violation of the Fifth, Sixth, Eighth, And Fourteenth Amendments of the United States Constitution and Ohio Constitution[, a]rt. I, §§ 2, 9, 10. The provisions contained in R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 violate the United States' obligations under international law on the face as applied to Obermiller.

6. The Sixth and Fourteenth Amendments are violated when a trial court selects grand jury forepersons from outside the grand jury venire and the selection process results in the underrepresentation of African Americans and women. U.S. Const. [a]mends. V, VIII, IX, XIV[;] Ohio Const. [a]rt. I, §§ 1, 2, 5, 9, 10, 16, and 20.

7. When a post-conviction petitioner cites other cases in which courts ruled that the prosecutor's office suppressed material evidence, the trial court should grant the petitioner the opportunity to conduct discovery to determine if the same constitutional violation occurred in his case. U.S. Const. [a]mends. V, VIII, IX, XIV[;] Ohio Const. [a]rt. I, §§ 1, 2, 5, 9, 10, 16, and 20.

8. Trial counsel are ineffective when they fail to fully investigate the facts and circumstances of the case before advising their client about a guilty plea.

9. A defendant does not knowingly, intelligently and voluntarily enter a guilty plea when a) he does not have all the relevant information concerning the strength of the State's case; and b) his mental illnesses compromised his ability to understand the consequences of such a plea.

10. A defendant cannot waive his right to present mitigation evidence when he is suffering from serious mental health issues and is under the influence of multiple medications. A court cannot obtain a valid waiver from a defendant in those circumstances.

11. A defendant is denied the effective assistance of counsel when counsel does not reasonably investigate mitigation during the pretrial proceedings; effectively use a mitigation specialist; investigate, prepare, and present witnesses; or investigate prepare, and present expert testimony.

12. Two or more constitutional errors can warrant the granting of relief, even if those errors individually do not.

15

(Doc. 30-7 at 430-31 (capitalization altered).)  The State filed a memorandum in response to jurisdiction.  (*Id*. at 552-77.)  On August 20, 2019, the court declined jurisdiction over the appeal. (*Id*. at 578.)

### B.  Federal Habeas Proceedings

Obermiller filed a notice of intent to initiate this habeas action on September 23, 2019. (Doc. 1.) That same day, he requested appointment of counsel and permission to proceed *in forma pauperis*.  (Docs. 2, 3.) He filed a supplemental motion for appointment of counsel on January 28, 2020.  (Doc. 8.)  The Court granted the motions the following day, appointing the Federal Public Defender's Office for the Southern District of Ohio.  (*Id*.)

Obermiller filed a petition for writ of habeas corpus in this Court on August 20, 2020, asserting nineteen grounds for relief.  (Doc. 25.)  He filed an amended petition with this Court's permission on December 29, 2021, with eighteen grounds for relief.  (Doc. 44.)  Respondent filed a return of writ to the amended petition on April 21, 2022.  (Doc. 47.)  Obermiller filed a traverse on December 16, 2022.  (Doc. 58.)  And Respondent filed a sur-reply on April 7, 2023.  (Doc. 66.)

Obermiller filed a motion to compel discovery, which this Court denied on February 2, 2024. (Docs. 63, 69.)  He filed a motion to expand the record (Doc. 70), which the Court will address herein.

**PETITIONER'S GROUNDS FOR RELIEF**

Obermiller asserts eighteen grounds for relief, stated as:

1.  The trial court violated Petitioner Obermiller's right to autonomy and under the Sixth Amendment when it prevented him from acting as his own attorney.

2.  Mr. Obermiller's trial waiver and guilty plea were not knowing, voluntary and intelligent because his mental illness had deteriorated, rendering the waivers unknowing, involuntary and unintelligent in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights in the United States Constitution.

3. Ohio prosecutors historically demonstrate systemic bias by favoring White victims in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

4. The introduction of statements made during the course of a custodial interrogation without proper warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), violated Mr. Obermiller's rights to a fair trial, due process and a reliable determination of guilt as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

5. The trial court elicited and allowed the introduction of pervasive evidence that was irrelevant, inadmissible, and prejudicial in violation of Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

6. The gruesome and repetitive photographs admitted at trial deprived Mr. Obermiller of due process, a fair trial and reliable sentencing determination in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

7. Mr. Obermiller was deprived of his constitutional right to the effective assistance of counsel during the trial phase of his capital trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

8. Prosecutors injected inflammatory and improper facts into the trial in violation of Mr. Obermiller's Fourteenth Amendment rights to the United States Constitution.

9. Mr. Obermiller was not competent to waive his right to a mitigation presentation and the right to brief mitigation issues for the trial court.  Mr. Obermiller's Fifth, Sixth and Fourteenth Amendment rights to the United States Constitution were violated.

10. Mr. Obermiller was denied effective assistance of counsel when counsel permitted Mr. Obermiller to waive his right to a mitigation presentation and waived the right to brief the issue for the trial court.  Mr. Obermiller's Fifth, Sixth and Fourteenth Amendment rights to the United States Constitution were violated.

11. Mr. Obermiller's right to due process, a fair trial and the effective assistance of counsel was denied by counsel's deficient performance during the penalty phase of his trial in violation of the Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

12. The Ohio court in which Mr. Obermiller was prosecuted disproportionately excludes African Americans from serving on grand juries.  This exclusion violates Mr. Obermiller's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of the Constitution.

13. The trial court violated Petitioner Obermiller's right to reliable sentencing by relying on improper aggravating factors *Eddings v. Oklahoma*, 455 U.S. 104 (1982).

14. Mr. Obermiller's rights under the Fifth, Sixth and Fourteenth Amendment rights to the United States Constitution were violated when he was denied the effective assistance of appellate counsel.

15. The trial court violated Petitioner Obermiller's right to a fair trial under the Sixth Amendment when it committed various errors that individually and cumulatively denied him a fair trial.

16. The trial court and the State of Ohio violated Mr. Obermiller's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution when the court erroneously allowed Mr. Obermiller to waive the presentation of mitigation evidence.

17. The death penalty on its face and as applied to Mr. Obermiller is arbitrary, cruel and unusual, and violates due process.  U.S. Const. Amends. V, VI, VIII, and XIV.

18. Ohio's statutory death penalty scheme violates United States [*sic*] obligations  under international law.

(Doc. 44 at 67, 71, 77, 79, 82, 90, 95, 102, 106, 108, 113, 144, 147, 150, 151, 154, 156, 171

(capitalization altered).)

**STANDARD OF REVIEW**

### A.   AEDPA Review

Habeas corpus is essentially "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Obermiller's petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (AEDPA governs federal habeas petitions filed after Act's effective date).  The Act, which amended 28 U.S.C. § 2254, authorizes federal courts to issue writs of habeas corpus to state prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

At the same time, however, AEDPA was intended "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity,

finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  The Act "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id*. at 19.

Most significantly, § 2254(d) forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts will presume a state court has adjudicated a federal claim "on the merits," and AEDPA deference therefore applies, regardless of whether the last state court to decide the claim provided little or no reasoning at all for its decision.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (applying presumption to state-court summary dispositions); *see also Johnson v. Williams*, 568 U.S. 289, 292-93 (2013) (applying *Richter* presumption to state-court decisions that rule against a defendant and address some issues, but not expressly the federal claim in question).

"[C]learly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks and citations omitted).  When identifying what a Supreme Court decision actually holds, courts should not frame the decision "at too high a level of generality." *Woods v. Donald*, 575 U.S. 312, 318 (2015).  Clearly established law under § 2254(d)(1) "squarely addresses" the issue presented or "clearly establishes" a legal rule developed in a different context applied to the facts of that case. *Wright v. Van Patten*, 552 U.S. 120, 125 (2008).

A state-court decision is "contrary to" clearly established federal law under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under § 2254(d)(1)'s "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 75 (citations omitted).  "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Id.* (citations omitted).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) if the court made a "clear factual error." *Wiggins v. Smith,* 539 U.S. 510, 528-29 (2003).  The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual

determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[2] The Supreme Court has cautioned, however, that "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen,* 558 U.S. 290, 301 (2010)).

In deciding whether a state court's decision "involved" an unreasonable application of federal law or "was based on" an unreasonable determination of fact under § 2254(d), a habeas court must "'train its attention on the particular reasons – both legal and factual – why state courts rejected a state prisoner's federal claims . . . .'" *Wilson v. Sellers,* 584 U.S. 122, 125 (2018) (quoting *Hittson v. Chatman*, 576 U.S. –, 135 S. Ct. 2126, 2126 (2015) (Ginsburg, J., concurring in denial of certiorari. In cases in which the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion, a habeas court "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*[3]

---

[2] Section 2254(e)(1) provides: "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[3] The Sixth Circuit has adhered to *Wilson*'s directive. *See, e.g., Cassano v. Shoop*, 1 F.4th 458, 472 (6th Cir. 2021) ("this Court reviews only the Ohio Supreme Court's reasons for denying Cassano's claim") (citing *Wilson*, 138 S. Ct. at 1192); *Coleman v. Bradshaw*, 974 F.3d 710, 719 (6th Cir. 2020) ("AEDPA requires this court to review the actual grounds on which the state court relied") (citing *Wilson*, 138 S. Ct. at 1192); *Thompson v. Skipper*, 981 F.3d 476, 480 (6th Cir. 2020) (following and quoting *Coleman*);. But the circuit court also has acknowledged that "[i]n the wake of *Wilson*, courts have grappled with whether AEDPA deference extends only to the reasons given by a state court (when they exist), or instead applies to other reasons that support a state court's decision." *Thompson*, 981 F.3d at 480 n.1 (listing cases); *see also id.* at 483-85 (Nalbandian, J., concurring in result but emphasizing that "[f]ederal courts have never been

But when the last state court to adjudicate a federal claim on the merits issues an *unexplained* order upholding a lower court's *explained* judgment on a federal claim, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "then presume that the unexplained decision adopted the same reasoning." *Id.* (adopting the "look through" presumption in determining procedural default of federal habeas claims established in *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).  The state may then rebut this presumption "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued for the state supreme court or obvious in the record it reviewed."  *Id.*

The Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims.  The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Richter*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Richter,* 562 U.S. at 102-03 (internal quotation marks and citation omitted).  A petitioner, therefore, "must show that the state court's ruling . . .

_____

required to confine their habeas analysis to the exact reasoning that the state court wrote, and neither [*Wilson* nor *Coleman*] compels us to change our analysis").

was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.  This is a very high standard, which the Court readily acknowledges:  "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

But AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*.  "[E]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Federal habeas courts may, for example, review *de novo* an exhausted federal claim where a state court misapplied a procedural bar and did not review the claim on the merits.  *See, e.g., Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005).  They likewise may review *de novo* claims adjudicated on the merits in state court if the petitioner meets the criteria for one of § 2254(d)'s exceptions.  *See, e.g., Wiggins,* 539 U.S. at 534 (performing *de novo* review under *Strickland*'s second prong because the state court unreasonably applied the law in resolving *Strickland*'s first prong).

## B.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only

to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is an "important corollary" to the exhaustion requirement. *Davila v. Davis,* 582 U.S. 521, 527 (2017) (internal quotation marks and citation omitted). The doctrine generally prevents federal courts from hearing federal constitutional claims that were not presented to the state courts "consistent with [the state's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). It occurs when a habeas petitioner failed to either: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28.

Where a state court declines a prisoner's federal claim because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).[4]

---

[4] In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit established the now-familiar test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule. It is:

First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction – that is, whether the state courts actually based

A petitioner also may procedurally default a claim by failing to raise the claim in state court and pursue it through the state's "'ordinary appellate review procedures,'" if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the petitioner's] claims are now procedurally barred under [state] law'" (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th

---

their decisions on the procedural rule. Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

Cir. 2000)).  Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

In determining whether a claim is procedurally defaulted and barred from consideration on federal habeas review, habeas courts again employ a "look through" presumption and review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst,* 501 U.S. at 805 (emphasis in original).  If the last state court "explicitly imposes a procedural default," then the claim is presumed defaulted.  *Id.* at 803; *see also Harris v. Reed*, 489 U.S. 255, 263 (1989) (state court must "clearly and expressly state[] that its judgment rests on a state procedural bar" to result in procedural default).  Conversely, if the last state court presented with the claim reaches its merits in a decision that "'fairly appear[s] to rest primarily upon federal law,'" then any procedural bar is presumed removed, and the federal habeas court may consider the merits of the claim in its review.  *Ylst*, 501 U.S. at 803 (citation omitted).[5]

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered.  *Coleman*, 501 U.S. at 750.  "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id*.  To establish prejudice, a petitioner must demonstrate "not merely that the errors at his trial created a *possibility* of prejudice, but that they

---

[5] Also, where a later state-court decision rests upon a prohibition against further state review, the decision "neither rests upon procedural default nor lifts a pre-existing procedural default, [and] its effect upon the availability of federal habeas is nil . . . ."  *Ylst*, 501 U.S. at 804 n.3.

worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

A fundamental miscarriage of justice in capital cases also means actually innocent of the death penalty.  *See Sawyer v. Whitley*, 505 U.S. 333, 347 (1992).  In this sense, "[t]o show 'actual innocence' one must show by clear and convincing evidence that, but for a constitutional error, no reasonable jury would have found the petitioner eligible for the death penalty under the applicable state law."  *Id.* at 336.  This "actual innocence" standard "must focus on the elements that render a defendant eligible for the death penalty."  *Hutton v. Mitchell*, 839 F.3d 486, 498 (6th Cir. 2016) (citing *Sawyer*, 505 U.S. at 347).

## C.    Cognizability

Federal habeas courts also must consider whether the petitioner's claims are cognizable.  To the extent a claim alleges state-law violations, it is not reviewable by a federal habeas court and must be dismissed on that basis.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

27

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Courts, therefore, "'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id*. (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

## ANALYSIS

### I. **First Ground for Relief: *Right to Self-Representation***

For his first ground for relief, Obermiller argues that the trial court violated his constitutional right to represent himself. (Doc. 44 at 67-70.) He presented this claim on direct appeal to the Ohio Supreme Court, which adjudicated it on the merits. *See Obermiller*, 147 Ohio St. 3d at 179-86. The claim, therefore, is preserved for federal habeas review. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (habeas claim exhausted where petitioner "invok[es] one complete round of the State's established appellate review process").

The Ohio Supreme Court, in rejecting this claim, reasoned:

{¶ 24} In proposition of law No. 1, Obermiller argues that his Sixth Amendment rights were violated both when the presiding judge denied his request to waive counsel and when the three-judge panel "successfully bullied [him] out of his desire to represent

28

himself." Obermiller also contends that the panel should have explored the possibility of appointing standby counsel.

{¶ 25} A criminal defendant's right to self-representation is rooted in the Sixth Amendment to the United States Constitution, which provides: "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence." The Ohio Constitution provides that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Article I, Section 10, Ohio Constitution.

1{¶ 26} The Sixth Amendment right to counsel "implicitly embodies a 'correlative right to dispense with a lawyer's help.' " *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 23, quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). This right is thwarted when counsel is forced upon an unwilling defendant, who alone bears the risks of a potential conviction. *See Faretta v. California*, 422 U.S. 806, 819–820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

{¶ 27} In *Faretta*, the United States Supreme Court held:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Id*.

{¶ 28} Not long after *Faretta* was decided, we held that the Sixth Amendment "guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta*. We have also recognized that if a trial court denies the right to self-representation when that right is properly invoked, the denial is, per se, reversible error. *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996), citing *McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), fn. 8. And although *Faretta* was not a capital case, *see Faretta* at 807, 95 S.Ct. 2525, both the United States Supreme Court and this court have applied *Faretta* in capital cases and have acknowledged that valid waivers of counsel in capital cases will be upheld. *See, e.g., Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1. We have held that it is an abuse of discretion for a trial court to refuse

to allow a defendant in a capital case to proceed pro se if the defendant properly invokes the right to self-representation. *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 74. Determining whether a defendant has properly invoked the right to self-representation is a critical duty in any case, but the determination is especially important in a capital case.

{¶ 29} A criminal defendant must "unequivocally and explicitly invoke" the right to self-representation. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. Requiring that a request for self-representation be both unequivocal and explicit helps to ensure that a defendant will not "tak[e] advantage of and manipulat[e] the mutual exclusivity of the rights to counsel and self-representation." *United States v. Frazier–El*, 204 F.3d 553, 559 (4th Cir.2000). For this reason, courts must "indulge in every reasonable presumption against waiver" of the right to counsel. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).1

{¶ 30} Additionally, as was recognized in *Faretta*, the trial court must be sure that the criminal defendant "knowingly and intelligently" forgoes the "traditional benefits associated with the right to counsel." 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562. The defendant "need not himself have the skill and experience of a lawyer" in order to choose to represent himself, but he "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Id*., quoting *Adams,* 317 U.S. at 279, 63 S.Ct. 236, 87 L.Ed. 268. Whether a defendant's choice was made with eyes open typically "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Thus, a defendant's unambiguous assertion of the right to self-representation triggers a trial court's duty to conduct the *Faretta* inquiries to establish that the defendant is knowingly and voluntarily waiving his constitutional right to counsel. *United States v. Cromer*, 389 F.3d 662, 682–683 (6th Cir.2004).

{¶ 31} Finally, even if a defendant has made an unequivocal and explicit request for self-representation, a defendant may later waive that request by acquiescing in counsel's representation. *See Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 42, citing *McKaskle*, 465 U.S. at 182, 104 S.Ct. 944, 79 L.Ed.2d 122.

*Obermiller's first request for self-representation*

{¶ 32} Obermiller contends that the presiding judge "improperly denied his request to represent himself." We disagree.

{¶ 33} On the day trial was set to begin, Obermiller told the trial judge: "I wish to change my plea to guilty and I would also like to represent myself from this point forward." The presiding judge first explained to Obermiller that in a capital case, a guilty plea must be considered by a three-judge panel before it is accepted. The judge next addressed Obermiller's request for self-representation. The judge asked Obermiller 13 substantive

questions, mostly related to his interactions and degree of satisfaction with his current counsel, his previous incarceration, his experience with the juvenile-justice system, and his age. After this brief inquiry, the trial judge informed Obermiller that "at this time, the Court is not going to grant that request." She further stated in his presence that the issue of self-representation would be revisited once the panel was selected.

{¶ 34} Under these facts, the presiding judge did not *deny* Obermiller's request for self-representation; she merely *postponed* consideration of the request. The judge specifically declared that once the panel had been selected, the court would revisit the question of self-representation. And it did.

{¶ 35} The postponement of the self-representation inquiry appropriately permitted the additional panel members to participate in evaluating the request. And no substantive proceedings occurred between the presiding judge's discussion with Obermiller of his self-representation request and the three-judge panel's resumption of the inquiry. Thus, contrary to Obermiller's assertion, the presiding judge never "denied" his request.

{¶ 36} Indeed, in previous cases in which a trial court held multiple hearings before ruling on a defendant's request for self-representation, we have not found that the court erred in failing to rule immediately on the request. *See Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 13 (trial court "[u]ltimately * * * reserved judgment on the representation issue until another pretrial conference"); *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 42 (trial court held at least four separate hearings, over the course of multiple weeks, on defendant's request to waive counsel).

{¶ 37} Next, Obermiller argues that the panel's colloquy regarding his request for self-representation was unnecessary and that it was "designed to wear [him] down."

*The three-judge panel revisits the request for self-representation*

{¶ 38} After the trial court accepted Obermiller's jury waiver and convened a three-judge panel, the panel extensively questioned Obermiller regarding his request to waive counsel. The questions focused on Obermiller's familiarity with the criminal-justice system and with Title 29 of the Ohio Revised Code, his educational background (with an emphasis on Obermiller's lack of legal education), and his knowledge of trial procedure. The panel explored the various pitfalls related to self- representation, warned Obermiller that he would be held to the same standards as would a licensed attorney, and discussed with him the possible claims that he would forfeit on appeal if he waived counsel. The panel also asked Obermiller about the reasons for the timing of his request to waive counsel and his satisfaction with defense counsel.

{¶ 39} Finally, the panel read parts of the indictment into the record and questioned Obermiller about his awareness of the crimes with which he was charged and whether he understood the concepts of lesser-included and inferior-degree offenses. The panel questioned whether Obermiller understood the gravity of a capital case. Obermiller for the most part admitted that he did not understand those legal concepts or the nuances of

the crime of murder, including defenses and justifications. Despite the pitfalls described to him, Obermiller stated, "I have discussed it with my attorneys. I feel confident with going without an attorney."

{¶ 40} This colloquy lasted approximately 34 minutes, which Obermiller suggests was too long. But 34 minutes is not a burdensome amount of time to explore the issue of self-representation in a capital case.

{¶ 41} Contrary to Obermiller's assertion that the panel's inquiry was unnecessary, because he made an unequivocal request to represent himself in addition to stating that he intended to enter a guilty plea to the capital indictment, *Faretta* required the panel to conduct a rigorous colloquy. Under *Faretta*, the panel was required to ensure that Obermiller was "made aware of the dangers and disadvantages of self-representation," to establish a record showing that Obermiller made the decision to represent himself with "'eyes open.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562, quoting *Adams*, 317 U.S. at 279, 63 S.Ct. 236, 87 L.Ed. 268. In any event, *Faretta* imposes "rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), citing *Faretta* at 835–836, 95 S.Ct. 2525.

{¶ 42} In light of the requirement that a trial judge "must investigate [a defendant's request for self-representation] as long and as thoroughly as the circumstances of the case before him demand," *Von Moltke v. Gillies,* 332 U.S. 708, 723–724, 68 S.Ct. 316, 92 L.Ed. 309 (1948), we cannot say that the panel's colloquy was unreasonable or that the panel coerced Obermiller into accepting representation. In a capital case, the court has a corresponding duty to ensure the reliability of proceedings. A less searching colloquy would have been nothing more than "token obedience" to the important rights guaranteed by the Sixth Amendment, given the significance of the charges—and the ultimate penalty—that Obermiller faced. *See id*. at 723, 68 S.Ct. 316.

{¶ 43} The court must be satisfied that the waiver of the right to counsel is knowing and voluntary, and the court's colloquy must ensure that the defendant has been "made aware of the dangers and disadvantages of self-representation." *Faretta* at 835, 95 S.Ct. 2525. The specific nature of the colloquy varies from case to case, depending on the nature and circumstances of the charged offenses and potential penalties the defendant faces.

{¶ 44} The record here does not establish that the colloquy was designed to "wear down" Obermiller or overcome his stated desire to represent himself. Rather, when considered as a whole, the three-judge panel's inquiry was undertaken to comply with its duty to ensure that it fully informed Obermiller of the risks of his decision to represent himself, in order to satisfy the requirements for a rigorous inquiry mandated by the Supreme Court in *Faretta* and other cases.

{¶ 45} Moreover, the record establishes that Obermiller ultimately withdrew his request for self-representation and that this decision was knowing and voluntary.

*Obermiller withdraws his request for self-representation*

{¶ 46} Before any ruling on the self-representation request was made, a panel member stated: "Mr. Obermiller, you have your own purpose, and your purpose is you want to be your own attorney so you can present no defense and you don't want to do anything on your own behalf. * * * [Do you] just want to sit there and take punches?" To this, Obermiller replied: "Yes."

{¶ 47} The judge pursued this line of questioning a bit further before Obermiller abruptly stated:

> There's no * * * thing saying I got to do anything. Or even if you keep these two people here, they can still only do what I tell them to do. So what's the point with all these questions? I don't understand it. Whether or not you want to keep them here—as a matter of fact, they can stay. I really don't care at this point.

{¶ 48} Hearing this, a panel member asked several follow-up questions to confirm that Obermiller had withdrawn his request to waive counsel:

> JUDGE SAFFOLD: Okay. Then you won't waive [your right to counsel].
>
> THE DEFENDANT: No, I don't waive it. They can stay.
>
> JUDGE SAFFOLD: All right. You want to proceed then with your lawyers?
>
> THE DEFENDANT: Yes.
>
> JUDGE SAFFOLD: Okay. Thank you. Let the record indicate that we've * * * had an inquiry with the proper questions being placed before the defendant on whether or not to waive counsel, and * * * Mr. Obermiller has withdrawn that request.

{¶ 49} At this point, Obermiller definitively "abandoned any intention to represent himself." *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 42, citing *McKaskle*, 465 U.S. at 182, 104 S.Ct. 944, 79 L.Ed.2d 122. And Obermiller never reasserted the request for self-representation. Instead, the proceedings continued with Obermiller represented by counsel.

. . .

{¶ 52} For the foregoing reasons, we reject proposition of law No. 1 and hold that Obermiller's Sixth Amendment right to self-representation was not violated.

*Obermiller*, 147 Ohio St. 3d at 179-85 (emphasis in original).

Obermiller argues that the Ohio Supreme Court's decision violates AEDPA's § 2254(d) in two respects:  (1) the court's finding that the trial court "delayed" its decision regarding his waiver of counsel, rather than denying it, until the three-judge panel could consider it, was an unreasonable determination of fact under § 2254(d)(2); and (2) the court's rejection of his argument that the panel coerced him into withdrawing his request for self-representation was an unreasonable application of Supreme Court precedent under § 2254(d)(1).  (Doc. 58 at 16-18.)

The Sixth Amendment explicitly guarantees every criminal defendant the right to counsel to assist with his defense.  U.S. Const. amend. VI.  But in *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court also recognized that a criminal defendant has "a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so."  *Id*. at 807 (emphasis added); *see also Godinez v. Moran*, 509 U.S. 389, 400-02 (1993) (applying *Faretta* in a capital case).  This right to self-representation, the Court explained, stems from "a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so."  *Faretta,* 422 U.S. at 817.

Nevertheless, "the right to self-representation is not absolute."  *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 161 (2000).  Because the dangers and disadvantages of self-representation during trial are so great, the Court has explained, there is a "strong presumption against" waiver of the right to counsel.  *Patterson v. Illinois*, 487 U.S. 285, 307 (1988).  "[I]t is clear that it is representation by counsel that is the standard, not the exception."  *Martinez*, 528 U.S. at 161.  "Even at the trial level, . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."  *Id*.

at 162 (holding that *Faretta* does not require that a criminal defendant be allowed to represent himself on direct appeal).

The defendant, therefore, must "'knowingly and intelligently'" elect to conduct his own defense.  *Faretta*, 422 U.S. at 835 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464-65 (1938)). Courts must conduct a "searching or formal inquiry" to ensure that a defendant's waiver of the right to counsel is valid.  *Patterson*, 487 U.S. at 299.  "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1943)).  Whether a defendant has made an intelligent waiver of counsel "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Zerbst*, 304 U.S. at 464.

The defendant's request to proceed without counsel also must be "clear and unequivocal." *See, e.g., Raulerson v. Wainwright*, 469 U.S. 966, 969-70 (1984) (Marshall, J., dissenting from an order denying certiorari) ("[S]ince a defendant must act affirmatively to relinquish the right to counsel, it follows that the right of self-representation must affirmatively be asserted as well."); *United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004) ("*Faretta* procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed pro se . . . .").  In *Faretta*, the Court observed that the defendant had "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel."  *Faretta*, 422 U.S. at 835.

Here, the Ohio Supreme Court reasonably concluded that, applying *Faretta* and its progeny, the presiding judge properly addressed Obermiller's initial request to represent himself and the three-judge panel properly accepted his later withdrawal of that request.

First, Obermiller has not demonstrated that the state court clearly and convincingly erred in finding that, when Obermiller first sought to proceed pro se, the presiding judge "did not *deny* [his] request for self-representation; she merely *postponed* consideration of the request." *Obermiller*, 147 Ohio St. 3d at 182 (emphasis in original).  As the court noted, she informed Obermiller that "at his time, the Court is not going to grant that request."  (Doc. 17-1 (Trial Tr.) at 224.)  Then, after explaining why she did not believe he should represent himself at that point based on her brief colloquy with him, she repeated her decision to delay any ruling on the matter, stating that "the Court sees no reason at this time to relieve [his counsel] of their responsibility."  (*Id*. at 225.)  Moreover, as the state court further observed, the presiding judge made clear her position on this issue, with Obermiller still present in the courtroom, in her response to the prosecutor's request for clarification on the matter:

> MR. AWADALLAH:  Your Honor, two things going on here and I understand your ruling about the self-representation.  He does have a Sixth Amendment right to self-represent himself if he wishes, and I understand we had some colloquy here.
>
> THE COURT:  But I will review that again once the three-judge panel is present.  You know, we're not at that stage to review it right now.  Right now, he has representation and we are seated right now to select a panel.  If he desires self-representation, after I have two of my colleagues, we'll revisit that again.
>
> MR. AWADALLAH:  Okay.  I would ask that that be revisited in a hearing where you advise.
>
> THE COURT:  Of course.  I will.

(*Id*. at 227.)

Second, the Ohio Supreme Court did not contravene or misapply *Faretta* or other Supreme Court precedent in concluding that the three-judge panel properly conducted its colloquy with Obermiller regarding his request to represent himself.  Obermiller argues that the panel violated his constitutional right to autonomy under *Faretta* and *McCoy v. Louisiana*, 584 U.S. 414 (2018), when it conducted a colloquy "designed to interfere with" his "clearly and unequivocally asserted" right to self-representation.  (Doc. 58 at 14, 17-18.)  He cites as an example one judge's question to Obermiller whether he "just want[ed] to sit there and take punches?"  (*Id*. at 17 (quoting Doc. 17-1 (Trial Tr.) at 285).)  But neither *Faretta* nor *McCoy* clearly established that a trial court violates a criminal defendant's right to autonomy through a lengthy and vigorous colloquy regarding the defendant's request to represent himself.

The Supreme Court emphasized in *Carey v. Musladin*, 549 U.S. 70 (2006), that "clearly established Federal law" under § 2254(d)(1) consists of "Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context."  *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  "In conducting the 'clearly established' inquiry," therefore, "lower courts must narrowly construe Supreme Court precedents and, as a consequence, 'clearly established' law 'consist[s] only of something akin to on-point holdings.'"  *Pouncy v. Palmer,* 846 F.3d 144, 161 (6th Cir. 2017) (quoting *House*, 527 F.3d at 1015).

In *McCoy*, the Supreme Court held that the trial court violated McCoy's Sixth Amendment right to "autonomy" by allowing defense counsel, over the defendant's repeated protests, to concede guilt in the guilt phase of trial to try to avoid the death penalty when the defendant wanted to mount an innocence defense instead.  *McCoy*, 584 U.S. at 417-18.  In determining what is

"clearly established" Supreme Court precedent, courts may not "'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule'" not announced by the Supreme Court. *Lopez v. Smith*, 574 U.S. 135 S. Ct. 1, 7 (2014) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)); *see also House*, 527 F.3d at 1016 n.5 (habeas courts may not "extract clearly established law from the general legal principles developed in factually distinct contexts"). *McCoy*'s holding, therefore, however fundamental to Sixth Amendment jurisprudence, does not address "the specific question presented by this case." *Smith*, 574 U.S. at 7.

      *Faretta* does not assist Obermiller either. The Court did not consider in that case – or in any other case – the argument that a trial court's colloquy concerning a self-representation request was too persuasive or coercive. To the contrary, *Faretta* clearly established that a trial court *must* conduct a thorough and careful inquiry with a defendant who clearly and unequivocally asserts the self-representation right. *See Faretta*, 422 U.S. at 835-36. As the Ohio Supreme Court stated, there is no evidence that the three-judge panel sought to "dissuade" Obermiller from representing himself. (Doc. 58 at 18.) The state court reasonably determined that under the circumstances of the case, the panel's inquiry was consistent with the "rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting [Obermiller] to waive his right to counsel at trial" that the Court clearly established in *Faretta* and its progeny. *Patterson*, 487 U.S. at 298 (citing *Faretta*, 422 U.S. at 835-36).

      Obermiller's first ground for relief, therefore, fails.

## II.   Second Ground for Relief:  *Competence to Enter a Guilty Plea*

Obermiller asserts, for his second ground for relief, that the trial court erred by accepting his guilty plea and waiver of a jury trial when he was mentally ill.  (Doc. 44 at 71-73.)[6]  Respondent argues that this claim is procedurally defaulted and without merit.  (Doc. 47 at 47-51.)

### A.  Procedural Status

Obermiller raised this claim on state post-conviction review.  (*See* Doc. 30-6 at 258-60 (Am. Post-Conv. Pet.).)  The last state court to review the claim, the court of appeals, found it barred by res judicata, as Obermiller could have raised it on direct appeal.  *Obermiller*, 2019 WL 1502500, at *8.  The court explained:

{¶42} In the eighth assigned error, Obermiller asserts that the trial court erred in denying his claim challenging the voluntariness of his guilty plea. He maintains that he suffered from mental illness so he could not understand the nature of his plea. He also complains that the trial court erred in denying him factual development of this claim.

{¶43} In his direct appeal, Obermiller maintained that the trial court erred in denying his motion to suppress and that this ruling "tainted his decision to plead guilty to the charges against him." *Obermiller I*, 147 Ohio St.3d 175, at ¶ 54, 63 N.E.3d 93. The Ohio Supreme Court specifically noted that "Obermiller has not challenged his guilty plea on appeal." *Id.* at ¶ 56. Accordingly, this claim, although not explicitly raised in the direct appeal, could have been raised, and it is therefore barred by res judicata.

*Obermiller*, 2019 WL 1502500, at *8.  The court proceeded to conduct a merits review of the claim, nonetheless.  *Id.*

Respondent argues that, because the state court asserted the res judicata bar, this claim is procedurally defaulted.  (Doc. 47 at 48.)  It is well settled that Ohio's res judicata doctrine is an adequate and independent state ground to procedurally bar from review claims asserted in federal habeas actions.  *See State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's res judicata rule

---

[6]  Obermiller also asserts in his second ground for relief that his counsel provided constitutionally ineffective assistance in failing to properly investigate his mental health at the time of his jury-trial waiver and guilty pleas.  (*See* Doc. 44 at 73-76.)  The Court will review that claim along with Obermiller's other ineffective-assistance claims.  (*See infra* Section VI(B)(2).)

precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal); *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) (Ohio's res judicata rule is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions).  This claim, therefore, is procedurally defaulted.  *See, e.g., Haliym v. Mitchell*, 492 F.3d 680, 697 (6th Cir. 2007) (finding petitioner's claim regarding his competency to waive a jury trial procedurally defaulted because he did not raise his claim on direct appeal; he first raised the claim in post-conviction proceedings).

Further, Obermiller does not offer any argument regarding the cause for, or prejudice resulting from, his procedural default of this claim.  Nor does he contend that he is actually innocent such that the default should be excused.  And the state court's alternative merits analysis does not resurrect the claim for purposes of federal habeas review.  *See, e.g., Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) ("The alternative holding thus does not require us to disregard the state court's finding of procedural bar.") (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)).  The claim is defaulted.

Obermiller counters, however, that this Court should not enforce the procedural bar because the state appellate court misapplied the res judicata rule to this claim.  (Doc. 58 at 18-19.)  Federal habeas courts can decline to observe Ohio's res judicata bar and instead review the merits of a federal claim when they conclude that the state court improperly invoked the procedural rule.  *See, e.g., Richey v. Bradshaw*, 498 F.3d 344, 359 (6th Cir. 2007); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012) ("[A]n incorrect application of a state res judicata rule does not constitute reliance on an adequate and independent state ground.").

Obermiller contends that res judicata does not apply to this claim because it could not have been brought on direct appeal, as it was based on evidence outside the trial-court record.  (Doc. 58

at 19.) Generally, under Ohio law, "the introduction in a [post-conviction] petition of evidence dehors the record . . . is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata." *State v. Cole*, 2 Ohio St. 3d 112, 114 (Ohio 1982). But to fall within this exception to the res judicata doctrine, "it is not sufficient for the petitioner to simply present evidence outside the record, he must also demonstrate that the evidence was not available at the time of his trial, or at the time of his direct appeal." *State v. Jones*, 2002 WL 31812945, at *3 (Ohio Ct. App. Dec. 13, 2002). Moreover, "[t]he outside evidence must meet a threshold level of cogency." *State v. Lynch,* 2001 WL 1635760, at *3 (Ohio Ct. App. Dec. 21, 2001). It "must be 'competent, relevant and material' to the claim, be more than marginally significant, and advance the claim 'beyond mere hypothesis and a desire for further discovery.' . . . [I]t must not be cumulative of or alternative to evidence presented at trial." *State v. Fears*, 1999 WL 1032592, at *3 (Ohio Ct. App. Nov. 12, 1999) (citations omitted).

Here, Obermiller claims that the extra-record evidence he submitted in state post-conviction proceedings to support this competency claim satisfies the standard of unavailability and cogency required to avoid the res judicata bar in Ohio. (Doc. 58 at 18-19.) The evidence consisted of: (1) his own affidavit, in which he averred, among other things, that he was heavily medicated before trial and had overdosed on the prescribed dosage of Klonipin and "couldn't care about anything[,]" and that he did not "really know what mitigation my lawyers had[.]" (Doc. 30-2 at 291 (Ex. 20)); (2) Social Security Administration records (*id*. at 292-347 (Ex. 21)); (3) Ohio Department of Rehabilitation and Corrections records (*id*. at 348-715 (Ex. 23)); (4) Cuyahoga County Department of Children and Family Services records (Doc. 30-3 at 4-515; Doc. 30-4 at 4-510 (Ex. 24)); (5) Cuyahoga County Juvenile Court records (Doc. 30-5 at 4-264 (Ex. 25)); (6) affidavit of mitigation specialist Dorian Hall (Doc. 30-6 at 284-314 (Ex. 35)); and (7) an affidavit of psychologist Dr.

41

Nancy Schmidtgoessling, who diagnosed him with bipolar disorder (*id*. at 421-49 (Ex. 36)).  (*Id*. at 258-60 (Am. Post-Conv. Pet.).)   Obermiller argues that these records document the numerous psychological disorders he had at the time of his trial, the medications he was taking, and his long history of mental illness and behavioral problems.  (*See* Doc. 58 at 20-21.)

This evidence, however, is not sufficient to overcome Ohio's res judicata bar.  First, most of this material was available to the defense at the time of his trial.  Second, the trial court had sufficient information about Obermiller's mental health, including some of the evidence he submitted in post-conviction proceedings, to evaluate whether he was competent to plead guilty and waive a jury trial, so much of the evidence Obermiller cites here is cumulative and/or would not have materially advanced his claim.  As will be explained in greater detail below, before accepting Obermiller's guilty pleas and jury-trial waiver, the trial court procured the opinion of a psychologist, with whom defense counsel agreed, that Obermiller was competent and was not intellectually disabled.  The court also conducted a colloquy on the record with the defendant and his counsel regarding the medications Obermiller was taking for mental health problems and his recent overdose on one of those drugs.  And a trial court has no obligation to inquire into a defendant's mental health history in evaluating a defendant's competency to take these actions. The state appellate court, therefore, did not misapply the res judicata bar to this claim, and it is procedurally defaulted.

### B.  Merits Analysis

Even if this claim were properly preserved for habeas review, it would fail.  As noted above, the state appellate court on post-conviction review addressed the merits of Obermiller's claim challenging his competency to plead guilty and waive a jury trial.  *Obermiller*, 2019 WL 1502500, at *8.  This ruling is an "adjudication on the merits," and therefore entitled to AEDPA deference,

even though the state court also decided in the alternative that the claim was barred on procedural grounds.  *See, e.g., Brooks v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008).

The state court reasoned:

{¶ 43} . . .  Moreover, as noted by the trial court:

> [T]he transcript directly refutes [Obermiller's] claims. The Court advised [Obermiller] of his rights and conducted an in-depth colloquy with [Obermiller] about any medications he was taking and the seriousness of his decision. * * * [On the morning of the plea, the Court asked Obermiller about any drugs that could alter his thinking. Obermiller] informed the Court that he was on Neurontin and Remeron * * * "for mental health reasons." * * * *[Obermiller] responded that he had not received any medication on the day of his plea. Furthermore [Obermiller] agreed that he had been on the medication long enough that his body had adjusted to it. Upon being asked by the Court to further consult with his attorneys regarding the decision that he was making, [Obermiller] responded, "We have been over this already. It's not going to change my decision."

{¶44} Finally, we note that the trial court referred Obermiller to the Court Psychiatric Clinic for a competency evaluation and he was determined to be competent and able to understand the ramifications of his plea.

{¶45} Accordingly, the eighth assigned error lacks merit.

*Obermiller*, 2019 WL 1502500, at *8.

Obermiller appears to assert two separate arguments in support of this claim: (1) a procedural due process claim, that the state appellate court unreasonably applied clearly established Supreme Court precedent in violation of AEDPA's § 2254(d)(1) in upholding the trial court's ruling when the three-judge panel failed to conduct a proper inquiry into his competence to waive his right to a jury trial and plead guilty; and (2) a substantive due process claim, that the appellate court's decision was based on an unreasonable determination of fact in violation of § 2254(d)(2), as he was not in fact competent to enter such a plea.  (Doc. 58 at 20-22.)  For both claims, this Court's review is limited to evidence presented in the state-court proceedings.  *See Cullen v. Pinholster*,

563 U.S. 170, 181 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); 28 U.S.C. § 2254(d)(2).

### 1.  Procedural due process claim

The Supreme Court has observed that "a plea of guilty is more than an admission of conduct; it is a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  As such, a guilty plea constitutes a waiver of several federal constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers.  *Id*. at 243 (citations omitted).  The Court therefore has cautioned that "[i]gnorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality."  *Id*. at 242-43.

The well-established test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  The standard for competency to plead guilty is the same as for competency to stand trial:  the defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and have "'a rational as well as factual understanding of the proceedings against him.'"  *Godinez v. Moran*, 509 U.S. 389, 397-98 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

Accordingly, where the evidence raises a "'bona fide doubt'" as to a defendant's "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense[,]" a trial court must conduct a hearing on the issue.  *Drope v. Missouri*, 420 U.S. 162, 171-73 (quoting *Pate v. Robinson*, 383 U.S. 375, 385 (1966)).  But "only the most basic procedural safeguards" are required.  *Medina v. California*, 505 U.S. 437, 453

(1992) (internal quotation marks and citation omitted)).  The Supreme Court has never "prescribe[d] a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure" for determining competency.  *Drope*, 420 U.S. at 172. Rather, it has explained:

> [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Id.* at 180.

Obermiller alleges the state appellate court misapplied this clearly established Supreme Court precedent in upholding the trial court's finding that he was competent to plead guilty and waive a jury trial when the three-judge panel improperly relied "purely" on its "short" and "barebones" colloquy with him before his guilty pleas.  (Doc. 58 at 22.)  He argues that in *Indiana v. Edwards*, 554 U.S. 164, 178 (2008), the Court established that "pleading guilty requires more than basic competence to stand trial."  (*Id.*)

This Court disagrees.  While it is true that the Court found *Dusky*'s basic mental competence standard insufficient to protect the defendant in *Edwards*, that case is easily distinguished from this one.  There, the defendant wanted to represent himself, not to plead guilty or waive a jury trial. And in that situation, the Court found "little reason to believe that *Dusky* alone [was] sufficient" to protect the defendant, who may satisfy that standard yet not be able to competently represent himself at trial "given the different capacities needed to proceed to trial without counsel[.]" *Edwards*, 544 U.S. at 177.  It held that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct

his own defense at trial is mentally competent to do so" and may "insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id*. at 177-78. *Edwards*, therefore, addressed a specific factual context involving a defendant's request for self-representation and did not clearly establish a higher competency standard for defendants entering a guilty plea or waiving a jury trial. *See, e.g., Pouncy v. Palmer,* 846 F.3d 144, 161 (6th Cir. 2017) ("In conducting the 'clearly established' inquiry, . . . lower courts must narrowly construe Supreme Court precedents and, as a consequence, 'clearly established' law 'consist[s] only of something akin to on-point holdings.'") (quoting *House v. Patch*, 527 F.3d 1010, 1015 (10th Cir. 2008)).

Indeed, the three-judge panel in this case clearly satisfied the process established by the Court in *Dusky, Pate* and *Drope* to ensure that Obermiller was competent to enter a guilty plea and waive a jury trial. First, contrary to Obermiller's assertion, it did not rely "solely" on a "short" colloquy with him. The panel relied on the defense expert's evaluation and conclusion that he was competent. It granted defense counsel's request to retain a psychologist to evaluate Obermiller's competency and intellectual abilities, and at a hearing conduct shortly before Obermiller entered the guilty pleas and jury waiver, counsel informed the panel that the psychologist had rendered a verbal opinion that Obermiller was competent and was not intellectually disabled, and that they had no reason to disagree with her assessment. (Doc. 17-1 (Trial Tr.) at 238-39; 292.) Defense counsel further explained to the trial court that Obermiller was currently taking two prescribed medications for anxiety; that they were not aware of any side effects from the drugs or any impairment of his ability to think or make decisions because of the drugs; and that he had visited the hospital about five months earlier because of an unspecified problem with the medication. (*Id*.

at 293-97.)  They also told the panel that they advised Obermiller of the legal consequences of a guilty plea and had advised him against doing so, and that they believed he "appear[ed] sober and of clear mind" the day he entered the pleas and jury-trial waiver.  (*Id*. at 329, 332.)

Second, the trial court's colloquy with Obermiller regarding his competency was not "barebones."  As the state appellate court correctly and reasonably found, the panel conducted an "in-depth" inquiry.  *Obermiller*, 2019 WL 1502500, at *8.  It questioned Obermiller at length about his understanding of his pleas and its consequences, his medications and their current effect on him, and his mental clarity the day before he entered his pleas and again the day of the pleas.  (*See id*. at 287-313; 327-30.)  Obermiller was clear and emphatic in his decision to plead guilty.  (*See id*. at 293-97 ("Judge McGinty: Are you clear-headed, you make a knowing, intelligent, voluntary decision here today, sir? The Defendant: Yes, I am.").)  The state appellate court, therefore, did not contravene or misapply Supreme Court precedent in denying Obermiller's procedural due process claim related to his guilty pleas and waiver of his right to a jury.

### 2.  Substantive due process claim

Nor has Obermiller demonstrated that he is entitled to relief on his substantive due process claim related to his guilty pleas and jury-trial waiver.  A defendant's competency to plead guilty is a question of fact.  *See, e.g., Carter v. Bogan*, 900 F.3d 754, 770 (6th Cir. 2018).  In order to prevail on such a claim, a petitioner must show that the trial court's determination of the facts was unreasonable in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), or rebut the state court's factual finding with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1).  *Carter*, 900 F.3d at 770.

Obermiller does not clearly and convincingly refute any findings of the state trial court as cited by the appellate court; nor does he demonstrate that the court's findings were unreasonable.

He relies primarily on evidence he submitted on post-conviction review (listed above) recounting his history of mental illness – such as bipolar disorder, personality disorder, paranoia, attention deficit disorder, depression, polysubstance abuse, and self-injury – and childhood trauma – from, for example, his mother's violent death when he was very young, his father's and his own imprisonment, and alleged emotional, physical, and sexual abuse by his step-grandfather and other family members.  (*See* Doc. 44 at 71-73; Doc. 58 at 20-21.)

While this evidence clearly demonstrates that Obermiller had a history of mental health disorders and had experienced a troubled life, the issue for the panel in determining Obermiller's competency to plead guilty was whether he had a "'*present* ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'"  *Dusky*, 362 U.S. at 402 (emphasis added).  Obermiller argues that the past illnesses and trauma affected his psychological functioning at the time of his jury waiver and guilty pleas (*see, e.g.,* Doc. 44 at 72 ("[t]he untreated symptoms of these disorders would have negatively affected his ability to understand and waive his constitutional rights"), and at that time, "he was not being treated adequately" for his mental illnesses (Doc. 58 at 21). However, "even if [a defendant is] mentally ill, '[i]t does not follow that because a person is mentally ill he is not competent to stand trial.'"  *United States v. Dubrule*, 822 F.3d 866, 875-76 (6th Cir. 2016) (quoting *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996); *see also United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) ("the bar for incompetency is high"); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 671 (E.D. Mich. 2002) ("Not every manifestation of mental illness demonstrates incompetency to stand trial. Neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psychotic drugs can automatically be equated with incompetence.").

As explained above, Obermiller's own expert found him to be competent to plead guilty and waive his jury-trial rights at the time of his waiver and change of plea to guilty.  *See United States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004) ("It would be difficult to find such a due process violation here, where the district court's assessment of Defendant's competency at the plea hearing was subsequently confirmed by qualified mental health professionals, and where the record contains no professional opinion to the contrary."); *see also United States v. Lebron*, 76 F.3d 29, 32 (1st Cir. 1996) ("If a psychiatrist has determined that a defendant is competent, a court is not required to hold a further evidentiary hearing absent extenuating circumstances.").  And Obermiller does not directly challenge here the competency evaluation itself, such as the examiner's credentials or methodology, or the evaluation's timing.  Furthermore, both defense counsel and Obermiller himself assured the panel that he was competent.  And nothing in the record, such as Obermiller's demeanor and statements in court or his counsel's remarks, contradicts the panel's conclusion that despite any mental impairment he suffered from or may have had in the past, he was able to understand the consequences of his guilty pleas and consult with counsel in reaching his decision.

Thus, Obermiller has not shown that the state appellate court's decision affirming the trial court's finding that Obermiller was competent to enter his guilty pleas and waive a jury trial was based on an unreasonable determination of fact in light of the evidence presented; nor has he rebutted the presumption that the state court's finding was correct with clear and convincing evidence.  Obermiller's claims regarding his competency to plead guilty and waive a jury trial, therefore, are ungrounded.

## III.   Third Ground for Relief:  *Selective Prosecution*

49

Obermiller claims for his third ground for relief that the prosecutor violated his equal protection and Eighth Amendment rights in seeking the death penalty against him based on the race of his victims, who were White. (Doc. 44 at 77-78.) He raised this claim in state court on post-conviction review. (*See* Doc. 30-2 at 26-28.) The court of appeals, the last state court to address the claim, denied it summarily. *Obermiller*, 2019 WL 1502500, at *6. This claim, therefore, is preserved for federal habeas review. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) (holding that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applying presumption to state-court summary dispositions).

A criminal defendant who alleges an equal protection violation bears the burden of proving "'the existence of purposeful discrimination.'" *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)). Accordingly, he must prove that the purposeful discrimination "'had a discriminatory effect'" on him. *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). The defendant must show that "the decisionmakers in *his* case acted with discriminatory purpose." *Id.* (emphasis in original).

In *McCleskey v. Kemp*, the Supreme Court established the evidentiary standard for finding racial discrimination in a state's imposition of the death penalty where, as here, a petitioner offers no evidence specific to his own case to demonstrate discriminatory purpose in his sentencing, but instead uses statistical evidence to support an inference that racial considerations played a role. *McCleskey*, 481 U.S. at 292-97. It noted in part that the implementation of criminal laws against murder "necessarily requires discretionary judgments," including those of a prosecutor in seeking the death penalty. *Id.* at 296-97. And "[b]ecause discretion is essential to the criminal justice

process, we would demand exceptionally clear proof before we would infer that the discretion has

been abused." *Id*. at 297.  The Court held, therefore, that the petitioner's evidence – a statistical

study on the imposition of the death sentence in Georgia finding, among other racial disparities,

that prosecutors sought the death penalty for 70% of Black defendants with White victims, but for

only 19% of White defendants with Black victims – was " clearly insufficient to support an

inference that any of the decisionmakers in McCleskey's case acted with discriminatory purpose."

*Id*.; *see also Coleman v. Mitchell*, 268 F.3d 417 (2001).

The Sixth Circuit has applied *McCleskey*'s standard to Ohio's capital sentencing system in

several cases and found the petitioner's statistical evidence insufficient to establish discriminatory

purpose.  In *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001), for example, the petitioner

proffered evidence of a racial discrepancy between African-American representation in the Ohio

population generally, at nine percent, while their representation on Ohio's death row was forty-

nine percent.  *Id*. at 441.  Although the circuit court found that "racial imbalance . . . glaringly

extreme, it [was] no more so than the statistical disparities considered and rejected" in *McCleskey*.

*Id*. at 441-42.  *See also Loza v. Mitchell*, 766 F.3d 466, 496-97 (6th Cir. 2014); *Keene v. Mitchell*,

525 F.3d 461, 464 (6th Cir. 2008).

Obermiller's evidence here leads to the same result.  He asserts that from 1982, when Ohio

re-enacted the death penalty, until 2010, the year Obermiller's trial began, only ten White

defendants had been sentenced to death for murdering an African American, and in four of those

cases there were multiple victims in which at least one victim was White.  (Doc. 44 at 77-78.)  He

does not provide the total number of defendants sentenced to death during that time period.  As in

*Coleman*, this statistic, while somewhat troubling, "is no more so than the statistical disparities

considered and rejected" and is, in fact, far less significant than the study at issue in *McCleskey*,

and therefore does not "'demonstrate a constitutionally significant risk of racial bias'" in Ohio's capital sentencing scheme. *Coleman,* 268 F.3d at 441-42 (quoting *McCleskey,* 481 U.S. at 313).

Obermiller also asserts (with no developed argumentation) that the prosecutor's alleged selective prosecution violated his Eighth Amendment rights, because it "further[ed] the pattern of disproportionate capital prosecutions when the victims are Caucasian."  (Doc. 44 at 78.) *McCleskey* forecloses this claim as well, holding:

> [O]ur consistent rule has been that constitutional guarantees are met when the mode [for determining guilt or punishment] itself has been surrounded with safeguards to make it as fair as possible. Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious.  In light of the safeguards designed to minimize racial bias in the process, the fundamental value of jury trial in our criminal justice system, and the benefits that discretion provides to criminal defendants, we hold that the Baldus study does not demonstrate a constitutionally significant risk of racial bias affecting the Georgia capital sentencing process.

*McCleskey*, 481 U.S. at 313 (internal quotation marks and citations omitted and alteration in original).  Similarly, here, Obermiller does not explain in any manner how discrepancies that appear to correlate with the race of the victims here were caused by something invidious rather than the discretion given to juries under Ohio's death penalty scheme.

The court of appeals' decision summarily denying this claim, therefore, was neither contrary to, nor an unreasonable application of, *McCleskey* or any other Supreme Court precedent.  This claim, too, fails.

## IV.    Fourth Ground for Relief:  *Miranda Violations*

For his fourth ground for relief, Obermiller argues that the trial court violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), by failing to suppress incriminatory statements he made to police during the course of his arrest.  (Doc. 44 at 79-81.)  He raised this claim on direct appeal to the Ohio Supreme Court, which adjudicated it on the merits, and it is therefore ripe for federal habeas review.

The Ohio Supreme Court opined:

{¶ 53} We turn next to proposition of law No. 8, in which Obermiller argues that the trial court violated his Fifth Amendment right against self-incrimination when it denied his motion to suppress certain statements he had made. We also address the portion of proposition of law No. 4 in which Obermiller contends that defense counsel provided constitutionally ineffective assistance when counsel failed to adequately raise the issue of custodial interrogation in the motion to suppress.

{¶ 54} Specifically, Obermiller contends that the trial court erred when it found that he was not subjected to custodial interrogation when he made incriminating statements to officers at the time of his arrest. He further argues that he was especially prejudiced by the trial court's refusal to suppress a statement he made in response to a question about why he killed his grandmother. Obermiller protests that the court's ruling on the motion to suppress likely "tainted his decision to plead guilty to the charges against him" and states that he likely "would not have done so but for that erroneous ruling."

{¶ 55} A guilty plea is a complete admission of guilt under Crim.R. 11(B)(1), and a "defendant who * * * voluntarily, knowingly, and intelligently enters a plea of guilty with the assistance of counsel 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78, quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

{¶ 56} Obermiller has not challenged his guilty plea on appeal. By pleading guilty, Obermiller waived his right to raise any allegations of constitutional violations flowing from the trial court's resolution of his suppression motion. Thus, Obermiller is barred from raising on appeal his challenges related to the motion to suppress.

{¶ 57} Accordingly, we deny Obermiller's eighth proposition of law and the related portion of his fourth proposition of law.

*Obermiller*, 147 Ohio St. 3d at 186.

In *Miranda*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination is implicated whenever an individual is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda,* 384 U.S. at 478.   Because custodial interrogations are said to be inherently coercive, *Miranda* established that a suspect must be apprised of certain rights to protect this privilege, including the

right to remain silent. *Id*. at 444. For *Miranda* to apply, the defendant must be in custody and "subjected to questioning." *Id*. at 478.

As Obermiller concedes, the Supreme Court also has held that when a criminal defendant solemnly admits in open court that he is in fact guilty of the offense of which he was charged, he may not afterward raise independent claims relating to the deprivation of constitutional rights that occurred before he entered the guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). He argues, however, that the Ohio Supreme Court misapplied *Tollett* because, in his case, if the incriminatory statement at issue had been suppressed, "it is entirely possible that [he] would not have entered his guilty plea." (Doc. 58 at 28.)

The Court has never recognized such an exception to the *Tollett* rule, however, and this argument fails. *See McKnabb v. United States*, 551 F.2d 101, 102 n.1 (6th Cir. 1997) (holding that, under *Tollett*, the appellant's guilty plea waived his claim that he was denied counsel at a post-arrest interrogation). The Ohio Supreme Court reasonably concluded that Obermiller waived his *Miranda* rights under *Tollett* when he entered his guilty plea, and Obermiller's fourth ground for relief lacks merit.

## V.    Fifth and Sixth Grounds for Relief:  *Trial-Court Evidentiary Rulings*

Obermiller maintains for his fifth and sixth grounds for relief that the trial court erred in numerous evidentiary rulings. Specifically, he asserts that the admission of the following evidence violated his due process rights: (1) the testimony of the BCI computer forensic specialist regarding images from a computer found in the victims' house (Ground Five); (2) unchallenged hearsay testimony of Gina Mikluscak (Ground Five); (3) evidence of a juvenile domestic violence offense (Ground Five); (4) testimony about Obermiller's invocation of his right to remain silent (Ground Five); and (5) gruesome photographs (Ground Six). (Doc. 44 at 82-95; Doc. 58 at 30-36.)

54

Respondent maintains these claims are procedurally defaulted and/or without merit. (Doc. 47 at 55-62.)

### A. Procedural Status

Respondent argues that each of these evidentiary claims are procedurally defaulted because the Ohio Supreme Court asserted Ohio's contemporaneous objection rule to bar all but plain-error review of the claims, as Obermiller failed to object at trial to the challenged evidence. (*Id.* at 55-56.) With one exception (the claim regarding Mikluscak's testimony (sub-claim (2), as listed above)), that is true. *See Obermiller*, 147 Ohio St. 3d at 188-92 (¶¶ 65, 66, 71, 76, 80.) Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected. *See, e.g., State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998). Failure to adhere to this "firmly-established" rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted. *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006).

Obermiller counters that the claims are not defaulted because the Ohio Supreme Court reached their merits under plain-error review. (Doc. 58 at 29.) An Ohio court's review for plain error is "properly viewed as a court's right to overlook procedural defects to prevent manifest injustice . . . ." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *see also* Ohio R. Crim. P. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *State v. Long*, 53 Ohio St. 2d 91, para. three of the syllabus (Ohio 1978) ("Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."). A court's plain-error analysis, however, "does not constitute a waiver of the state's procedural default rules and resurrect the issue" for purposes of federal habeas review. *Keith*, 455 F.3d at

673; *see also Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (plain-error review "cannot resurrect an otherwise defaulted claim"). These claims, therefore, are procedurally defaulted. Moreover, Obermiller offers no argument regarding the cause for, or prejudice resulting from, the defaults, or that he is actually innocent.

With regard to Obermiller's claim regarding Mikluscak's testimony, Obermiller raised a nearly identical claim on direct appeal to the Ohio Supreme Court (*see* Doc. 30-1 at 557-58 (Appellant Merit Brf.)), but the court did not address it. When a habeas petitioner has presented a federal claim to a state court and the state court has denied relief, even though the court addressed some issues but not expressly the federal claim in question, a federal habeas court may presume that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Johnson v. Williams*, 568 U.S. 289, 292-93 (2013). As the state court here did not address this claim or expressly assert a procedural bar to it, the court is presumed to have considered the merits of the claim, and it is not procedurally defaulted. *See, e.g., Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (a habeas claim is not procedurally defaulted if the state court did not provide a "clear and express" statement that it was resting its judgment on a state procedural bar).

### B. Merits Analysis

Even if all of Obermiller's evidentiary claims were preserved for habeas review, they would not prevail. Generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). Federal habeas courts presume that state courts correctly interpret state evidentiary law in their evidentiary rulings. *Small v. Brigano*, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005). And they "do not pass upon 'errors in the application of state law, especially rulings regarding the admission or

exclusion of evidence.'" *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).

Nevertheless, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). A state-court evidentiary ruling, therefore, will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights. *Coleman*, 244 F.3d at 542. But they must be "so egregious that [they] result[]in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

### 1. Testimony of computer forensic specialist

Obermiller first argues that the trial court possibly considered testimony from a computer forensic specialist regarding Facebook images from a computer found in the victims' home that presented "improper prejudicial innuendo." (Doc. 58 at 30-32.) The Ohio Supreme Court, in rejecting this claim, stated:

{¶ 73} Obermiller contends that the panel "may have" considered testimony that placed before it "prejudicial innuendo" about the nature of images found on a computer in the Schneiders' home. The state called Natasha Branam, a "computer forensic specialist," to testify at the hearing about her examination of the computer. After the state had begun to question Branam, the defense objected. The prosecutor told the court that the state intended to use the computer information to show that Obermiller had been "accessing Internet porn sites." But the state ultimately withdrew Branam as a witness in light of objections by defense counsel. Furthermore, the state did not seek to admit Branam's forensic report, which included copies of the images recovered from the computer.

{¶ 74} The panel later called Branam back as a court's witness. Branam's testimony as a court's witness began by focusing on text messages sent to and from Obermiller's cell phone; those messages are not at issue in this appeal. After that testimony ended, a panel member asked Branam a question about the computer she had examined, and the defense

objected again to any testimony about the images found on of [*sic*] the computer. The prosecutor told the court that the images on the computer were of "a certain nature that may be relevant to the way that perhaps Miss Grandma Schneider died or in terms of being tied up and all of that, of a sexual nature." The prosecutor further stated that Branam would be able to testify that the images were downloaded "some months" prior to Obermiller's arrest.

{¶ 75} But the panel did not proceed to elicit testimony from Branam regarding the images. The panel took a recess, and upon the panel's return, a member stated, "We're not going to at this point delve into the pornography issues." There is no indication in the record that the panel ever revisited this topic.

{¶ 76} The record simply does not demonstrate that any information about the images on the computer was admitted into evidence or that the panel considered in its deliberations the state's description of what the testimony might have revealed. Obermiller fails to point to any evidence in the record that would support his speculation that the court considered the information. Consequently, Obermiller does not establish plain error.

*Obermiller*, 147 Ohio St. 3d at 190-91.

Obermiller claims the Ohio Supreme Court's decision unreasonably applied Supreme Court precedent and was based on unreasonable determinations of fact because the court "failed to acknowledge Branam's testimony" and a judge's "apparent confusion of what photos were in evidence." (Doc. 58 at 37 (citing Doc. 17-1 (Trial Tr.) at 1032).)  The court, however, did acknowledge that Branam testified and described that testimony.  Additionally, the court did not mention the judge's "apparent confusion" regarding photograph exhibits that Obermiller cites, but a review of the transcript reveals the exchange at issue was not significant.  Obermiller refers to a reference a judge made to a "nude" photograph of Obermiller that he believed had been introduced as an exhibit during Detective Allen Henderson's testimony about potential physical signs of drug use.  (Doc. 17-1 (Trial Tr.) at 1032.)  After the judge's remark, another judge immediately informed him that the nude photograph was discussed during Branam's testimony and had been withdrawn.  (*Id.*)  To the extent the judge was mistaken about the exact circumstances surrounding

the photograph, the confusion was quickly cleared up and does not demonstrate that the panel considered it or any other "prejudicial innuendo" relating to it in its deliberations.

As the state court reasonably concluded, Obermiller has not shown that this evidence was admitted or that the panel ever considered it; he merely speculates that it did so.  Indeed, the Supreme Court has explained that "[w]hen the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of [any] underlying inadmissible information and will not rely on that information for any improper purpose." *Williams v. Illinois*, 567 U.S. 50, 69 (2012).  In bench trials, it continued, "'judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.'" *Id*.  (quoting *Harris v. Rivera*, 454 U.S. 339, 346 (1981) (per curiam)).  There is a "'well-established presumption'" that "'the judge [has] adhered to basic rules of procedure,' when the judge is acting as a factfinder." *Id*. at 69-70 (quoting *Harris*, 567 U.S. at 346–47, and adding emphasis and alteration).

Accordingly, the panel took no action with respect to the forensic specialist's testimony that was fundamentally unfair to Obermiller, and this claim is not cognizable on habeas review.

### 2.  Mikluscak testimony

Obermiller next complains that the trial court erred in eliciting "an exhaustive amount of irrelevant and unfairly prejudicial evidence" from his former girlfriend, Gina Mikluscak.  (*See* Doc. 44 at 84-85; Doc. 58 at 32-33.)  He cites the panel's questions to her about Obermiller's arguments with her, drug use, weightlifting, mental and physical health, understanding of right and wrong, reason for raping and killing his grandmother, and possible expression of anger though sex.  (Doc. 58 at 84-85 (citing Doc. 17-1 (Trial Tr.) at 1162-70; 1185-93; 1229-36; 1248-58).)  As explained above, the Ohio Supreme Court did not address this claim in its decision.  But this Court's review of Ms. Mikluscak's testimony indicates that the evidence adduced from it was not

predominantly irrelevant or unfairly prejudicial, and it did not rise to the level of fundamentally unfair. This claim also is not cognizable on habeas.

### 3. Prior juvenile court record

Obermiller further claims that the three-judge panel "improperly heard" a reference to his juvenile-court domestic-violence offense during the testimony of his former stepmother, Stacy Lykins (or Stacy Muzic). (Doc. 58 at 38.) The Ohio Supreme Court, in rejecting this claim, opined:

> {¶ 63} During the direct examination of Stacy Muzic (also referred to in the transcript as Stacy Lykins), Obermiller's former stepmother, she testified that she could not recall being the victim in a 1996 domestic-violence juvenile-court proceeding against Obermiller, who was 14 years old at the time. She added, "No, Denny has never put his hands on me. Never." However, Muzic also testified that "there's a lot of stuff" that she does not remember due to injuries she suffered in a 2007 car accident.

> {¶ 64} Obermiller argues that evidence of his prior juvenile record was inadmissible under Evid.R. 403(B). He contends that this evidence was particularly damaging and prejudicial because it "involved a violent act against another of Obermiller's caregivers."

> {¶ 65} Because Obermiller failed to object to Muzic's testimony at the hearing regarding the domestic-violence incident, he has forfeited all but plain-error review. *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. We find no plain error here. Obermiller's alleged prior juvenile adjudication for domestic violence was not introduced or admitted into evidence. Muzic denied any memory of a 1996 domestic-violence incident involving Obermiller, and the state did not introduce any other evidence that would tend to establish the alleged juvenile adjudication for domestic violence. Additionally, the record does not demonstrate that the questioning of Muzic about the incident affected the outcome of the case. Therefore, Obermiller cannot demonstrate plain error with respect to this evidence.

*Obermiller*, 147 Ohio St. 3d at 188.

Obermiller argues that the evidence was irrelevant and prejudicial, and because "the court itself elicited the evidence, [it left] the impression that it must have been considered." (Doc. 58 at 33.) The panel, however, did not elicit any information at all about this prior offense; the State questioned the witness about it on direct examination and she could not recall the incident. (*See*

Doc. 17-1 (Trial Tr.) at 1355-56.)   As the Ohio Supreme Court found, this evidence was not introduced or admitted.  And, as explained above, a judge acting as a decisionmaker is presumed to follow all procedural rules and disregard any irrelevant or inadmissible evidence he or she hears. The trial court's handling of this evidence was not fundamentally unfair.  This claim, too, is noncognizable.

### 4.  Testimony about Obermiller's silence

Obermiller also claims that the trial court improperly commented on his invocation of his constitutional right to remain silent.  (Doc. 44 at 87.)  The Ohio Supreme Court, in reviewing this claim, decided:

> {¶ 66} During the plea hearing, the state offered the testimony of Detective Henderson, the investigating officer in charge of Obermiller's case. Henderson had been summoned to Licking County after Obermiller was arrested there and transported him to Cuyahoga County. After the defense waived cross-examination, one of the panel members asked Henderson if Obermiller had made any statements to him. Before Henderson finished his response, the state objected on the basis that the questioning was directed at Obermiller's invocation of his right to remain silent. However, the panel member stated that the right to object belonged to Obermiller and that any objection therefore had to come from him. But Obermiller offered no objection.

> {¶ 67} The panel resumed its questioning, and the same judge asked Henderson, "Did you have an opportunity to question him?" Henderson answered that he had "intended to talk to him" but that once Obermiller was advised of his *Miranda* rights, "he told me pretty much that he didn't have anything on his mind to talk about and chose not to speak to me." The panel member again asked Henderson whether Obermiller had made any statements other than at the time he was arrested, and Henderson replied that there were no other statements.

> {¶ 68} It is improper for either the prosecutor or the court to comment on a defendant's invocation of his right to remain silent. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). However, we have held that "[a] single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), citing *Meeks v. Havener*, 545 F.2d 9, 10 (6th Cir.1976). Moreover, "[j]udges, unlike juries, are presumed to know the law. Judges are trained and expected to disregard any extraneous influences in deliberations." *State v. Davis*, 63 Ohio St.3d 44, 48, 584 N.E.2d 1192 (1992).

{¶ 69} Because Obermiller did not raise an objection at trial, we review his claim for plain error. *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 14. Henderson's testimony about Obermiller's silence was not materially different from a single, isolated comment. And here, the testimony was made to a three-judge panel during a guilty-plea hearing. Thus, even if the panel erred in its questioning of Henderson, we cannot say that the error affected Obermiller's substantial rights, because neither the panel's questions nor the detective's answers implied guilt. *See* Crim.R. 52(B); *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240; *Treesh* at 480, 739 N.E.2d 749. Obermiller has failed to establish plain error.

*Obermiller*, 147 Ohio St. 3d at 188-89.

Obermiller confusingly argues that "[b]ecause the three-judge panel considered the evidence [regarding his silence], the [Ohio Supreme Court] should have done an analysis for error[,]" but did not.  (Doc. 58 at 39.)  But the state court did evaluate whether plain error occurred when the panel questioned the detective about Obermiller's silence, and it reasonably concluded on numerous grounds that there was no plain error affecting his substantial rights.  For the same reasons, the panel's questioning did not render the trial fundamentally unfair so as to violate Obermiller's due process rights, and this claim also is not cognizable on habeas review.

**5.  Gruesome photographs**

Finally, Obermiller challenges the introduction of photographs he alleges were gruesome and unduly prejudicial.  (Doc. 44 at 90-95.)  The Ohio Supreme Court, in addressing this claim, stated:

{¶ 77} Obermiller contends that the panel erroneously considered gruesome photographs and that the "cumulative use" of the images violated Evid.R. 403. He also argues that the introduction of these gruesome photographs violated his federal and state constitutional rights to a fair trial, due process, and a reliable determination of guilt.

{¶ 78} During the plea hearing, the state introduced hundreds of photographs showing every aspect of the homicide investigation. Many of these photographs depicted Obermiller's victims, both as they were found and as they underwent autopsies. But numerous photographs also depicted the crime scene without the victims, and others showed items such as the coins that Obermiller had allegedly taken from the Schneiders' home and the car that Obermiller was using when he was arrested.

{¶ 79} Because Obermiller pleaded guilty, "the admission of gruesome crime-scene or autopsy photographs could not have affected the guilty verdict." *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 136. Thus, we consider only the effect of the alleged error upon the panel's decision to impose the death penalty.

{¶ 80} In the penalty phase, Obermiller failed to object to the reintroduction of the photographs. Thus, Obermiller waived all but plain-error review. *Ketterer* at ¶ 137. The photographs portray the nature and circumstances of the double homicide, and they are not repetitive or cumulative. *See id.* at ¶ 138. Obermiller offers no evidence to rebut the presumption that the three-judge panel considered only the relevant, material, and competent evidence in arriving at its judgment or to establish that he was prejudiced by the photographs. Moreover, because it is permissible for a trial court to allow evidence presented in the guilt phase to be repeated in the mitigation phase, it was not improper for the court to readmit the photographs for the mitigation phase. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 73. Thus, Obermiller has not established plain error with respect to the admission of the photographs.

*Obermiller*, 147 Ohio St. 3d at 191-92.

Obermiller argues that the state court's decision was unreasonable because the trial court considered an "excessive number of gruesome photos." (Doc. 58 at 39.) A trial court's admission of gruesome photographs of a murdered victim does not violate the Constitution when there is some legitimate evidentiary purpose for demonstrating the nature of the injuries. *See, e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (finding no constitutional violation where "photographs were properly admitted as they demonstrated that Biros beat Engstrom rather severely and meticulously dissected her body with two different knives"); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding no constitutional violation where "multiple photographs 'were introduced during the coroner's testimony to illustrate the testimony,' that '[e]ach photograph presents a different perspective of the victim,' and that the photographs 'were used to illustrate' the nature of the encounter that immediately preceded [petitioner's] death").

In this case, Obermiller does not even attempt to refute the state court's findings that the challenged photographs depicted "the nature and circumstances of the double homicide," or offer any evidence to rebut the presumption that "the three-judge panel considered only the relevant,

63

material, and competent evidence in arriving at its judgment or to establish that he was prejudiced by the photographs." *Obermiller*, 147 Ohio St. 3d at 191. The introduction of these photographs, therefore, did not render Obermiller's trial fundamentally unfair, and this claim, too, is noncognizable.

## VI. Second, Seventh, Tenth, and Eleventh Grounds for Relief: *Ineffective Assistance of Trial Counsel*

Obbermiller, for his second, seventh, tenth, and eleventh grounds for relief, asserts numerous claims of ineffective assistance of trial counsel. (Doc. 44 at 95-102; 108-12; 113-44.) Combined, he alleges his trial counsel failed to: (1) investigate his mental health before he entered guilty pleas (Ground 2); (2) file a motion to suppress that identified applicable law (Ground 7); (3) object to the prosecutor's improper use of victim-impact statements (Ground 7); (4) cross-examine or object to any witnesses (Ground 7); (5) object to the court's use of his silence against him (Ground 7); (6) investigate and present arguments in the culpability and penalty phases of trial (Ground 7); (7) move to suppress his cell phone records (Ground 7); (8) object to the introduction of gruesome photographs (Ground 7); (9) object to inadmissible evidence elicited by the three-judge panel and the State (Ground 7); (10) maintain attorney-client privilege (Ground 7); (11) preserve issues for appeal (Ground 7); (12)(a) accept the trial court's proposal that they present mitigation evidence by brief, and (b) prevent him from waiving his right to present mitigation evidence (Ground 10); and (13) investigate and discover extensive mitigating evidence, including evidence of: (a) childhood trauma; (b) his adverse childhood experiences ("ACE") test score; (c) Donald Schneider's sexual abuse of him; (d) his mental illnesses; (e) prison medical records; and (f) his relationship with a female correctional officer at the juvenile corrections facility (Ground 11). (*Id.*) Respondent argues these claims are procedurally defaulted and/or without merit. (Doc. 47 at 48-61, 62-73.)

### A.  Procedural Status

Respondent concedes that Obermiller raised in state court sub-claims (2) through (6), (8), (9), (12)(a), and (13)(a) through (d), as listed above, where they were adjudicated on the merits and are therefore ripe for habeas review.  (Doc. 47 at 65, 68-69, 71.)  The remaining sub-claims – numbered (1), (7), (10), (11), (12)(b), and (13)(e) and (f) above – he contends are procedurally defaulted.  (*Id*. at 48-49, 65, 68-69, 71.)

*Sub-claim (1)*.  Obermiller asserted in state post-conviction proceedings, as both an independent claim and as part of his claim challenging his guilty pleas and jury-trial waiver, that his counsel were ineffective for failing to properly investigate his mental health before advising him on pleading guilty.  (*See* Doc. 30-6 (Am. Post-Conv. Pet.) at 256-60.)  Respondent argues that the state appellate court, the last state court to review this claim, found it barred by res judicata in its analysis of his claim challenging the guilty pleas, resulting in the claim's procedural default.  (Doc. 47 at 48.)  Obermiller does not specifically address the issue of this claim's procedural status at all.  (*See* Doc. 58 at 18-19.)

The state court did not mention this ineffective-assistance claim in its analysis of Obermiller's guilty-plea claim.  *See Obermiller*, 2019 WL 1502500, at *8 (¶ 42).  It did, however, refer to Obermiller's independent ineffective-assistance claim relating to the guilty plea by its numbered assignment of error (the seventh) in its analysis of Obermiller's other ineffective-assistance claims (the tenth assignment of error).  *See id.* at *7-8 (¶ 37).  Regardless, the state court asserted the res judicata bar to both the ineffective-assistance and guilty-plea claims.  *Id*. (¶¶ 38, 43.)  This claim, therefore, is procedurally defaulted.

*Sub-claims (7),(10), and (11)*.  Respondent argues that sub-claims (7), (10), and (11) are also procedurally defaulted because they are based on the trial record, but Obermiller never raised them

in state court and no longer can do so.  (*Id.* at 64-65.)  The Court agrees.  Under Ohio law, res judicata now prohibits Obermiller from raising these claims in any post-conviction proceeding. *See Wong v. Money,* 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."); *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's res judicata rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.)  And with no state-court remedies still available to him, Obermiller has defaulted this claim.  *See, e.g., Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

Obermiller counters that he raised these claims in his application to the Ohio Supreme Court to reopen his direct appeal.  (Doc. 58 at 40-41.)  As Respondent notes, however, Ohio Supreme Court Practice Rules permit defendants to reopen the direct appeal from a judgment only to present claims of ineffective assistance of *appellate counsel.*  Ohio S. Ct. Prac. R. 11.06(A).  And "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim," such as ineffective assistance of *trial counsel*, "does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'"  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)).  These claims, therefore, are procedurally defaulted, and Obermiller offers no argument regarding cause or prejudice or actual innocence to excuse the  default.

*Sub-claim (12)*.  Obermiller raised sub-claim (12)(a) on direct review to the Ohio Supreme Court, asserting that trial counsel were ineffective in declining the trial court's proposal that the

defense present mitigation evidence by brief or summarize the evidence that had already been presented that could be considered mitigating.  (*See* Doc. 30-1 at 571 (Appellant Merit Brf.).)  The court ruled on the merits of the claim, *see Obermiller*, 147 Ohio St. 3d at 194 (¶¶ 90-92), and, as noted above, it is ripe for habeas review.

But Obermiller also contends that on direct appeal he also raised "an argument about counsels' [sic] ineffectiveness for permitting [him] to waive his right to mitigation and to brief mitigation" – sub-claim (12)(b).  (Doc. 58 at 57.)  But, as Respondent argues, Obermiller never asserted that claim in state court.  (Doc. 47 at 68.)  Sub-claim (12)(b), therefore, is procedurally defaulted, as it was never raised and cannot now be raised in state court, and Obermiller makes no showing of cause and prejudice or actual innocence to excuse the default.

*Sub-claims (13)(e) and (f)*.  Obermiller presented sub-claims (13)(a) through (d), relating to counsels' ineffectiveness in developing mitigation evidence, on both direct appeal and post-conviction review.  (Doc. 30-6 at 267-69 (Am. Post-Conv. Pet.).)  And in both cases, the state courts adjudicated the claims on the merits. [7]  *See Obermiller*, 147 Ohio St. 3d at 194 (¶¶ 90-92); *Obermiller*, 2019 WL 1502500, at *8 (¶ 39).

Respondent correctly argues, however, that Obermiller did not raise sub-claims (13)(e) and (f) in state court, asserting that counsel were ineffective for failing to provide relevant prison records to "mental health experts" and to discover and present evidence that he was abused by a

---

[7] The state post-conviction court found that Obermiller had already raised these claims on direct review before the Ohio Supreme Court, and they were therefore barred by res judicata.  *Obermiller*, 2019 WL 1502500, at *8.  However, where a later state-court decision rests upon a prohibition against further state review, the decision "neither rests upon procedural default nor lifts a pre-existing procedural default, [and] its effect upon the availability of federal habeas is nil . . . ."  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991).  And the state post-conviction court nevertheless proceeded to conduct an alternative merits review.  *Id.*

female corrections officer.  (Doc. 47 at 71.)  And, as he may no longer raise those claims in state court, they are procedurally defaulted.  Moreover, Obermiller does not dispute Respondent's assertion of the default, nor does he offer any argument regarding cause and prejudice or actual innocence to excuse it.

Accordingly, sub-claims (1), (7), (10), (11), (12)(b), (13)(e) and (f) are procedurally defaulted.

## B.   Merits Analysis

Even if all of Obermiller's ineffective-assistance claims were properly preserved for review, they would fail.  The Supreme Court has long recognized the Sixth Amendment right to effective assistance of counsel at trial as a "bedrock principle in our justice system."  *Martinez v. Ryan*, 566 U.S. 1, 12 (2012); *see also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963).  The Court announced a two-prong test for claims of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668 (1984).  First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.   An attorney's performance is "deficient" if his or her representation falls "below an objective standard of reasonableness."  *Id*. at 688.  The court must "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time."  *Id*. at 689.  Second, the petitioner must show that he was prejudiced by counsel's errors, demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id*.

Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

If a petitioner fails to prove either deficiency or prejudice, his ineffective-assistance claim will fail. *Id.* Whether a petitioner has been deprived of the effective assistance of counsel, however, is a mixed question of law and fact to which the unreasonable-application prong of § 2254(d)(1) applies. *See, e.g., Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003).

The Supreme Court has emphasized that "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Harrington v. Richter,* 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). It has explained,

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.

*Id*. (internal quotation marks and citations omitted). Thus, "[j]udicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . ." *Strickland,* 466 U.S. at 689. "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment,'" recognizing "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (quoting *Strickland,* 466 U.S. at 689).

The Court further has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Richter,* 562 U.S. at 105 (internal quotation marks and citations omitted). It has cautioned:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question

is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*.

*Sub-Claims (2) through (6), (8), (9) and (12)(a).*  Obermiller raised claims on direct appeal to the Ohio Supreme Court that trial counsel were ineffective for failing to: file a motion to suppress that identified applicable law; object to prosecutor's improper use of victim-impact statements from Candace Flagg; cross-examine or object to any witnesses; object to the court's use of Obermiller's silence against him; investigate and present arguments in the culpability and penalty phase of trial; object to the introduction of gruesome photographs; object to inadmissible evidence elicited by the three-judge panel and the State; and accept the trial court's proposal that they present mitigation evidence by brief.  The state high court analyzed the claims collectively, opining:

> {¶ 82} In proposition of law No. 4, Obermiller argues that his counsel provided constitutionally ineffective assistance throughout the plea hearing and mitigation phase. *See* Sixth and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Section 10. Obermiller contends that defense counsel were constitutionally ineffective for the following failures: not making opening and closing arguments during both phases; not cross-examining the state's witnesses; and not objecting to prosecutorial misconduct during the plea hearing, to the introduction of allegedly inadmissible evidence elicited by both the state and the panel, to the state's use of graphic photographs, and to the panel's questions to Detective Henderson regarding Obermiller's invocation of his right to remain silent. He also maintains that counsel failed to file a "meaningful motion to suppress" and failed to "brief mitigating factors for the trial court." In response, the state asserts that Obermiller's refusal to allow defense counsel to actively defend him throughout the proceedings precludes a finding that defense counsel's performance was deficient in any respect.

> {¶ 83} The standard for addressing ineffective-assistance-of-counsel claims is twofold: first, the defendant must show that his counsel's performance was deficient, and second, he must show that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> *Deficient performance*

70

{¶ 84} The deficient-performance prong requires Obermiller to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed * * * by the Sixth Amendment." *Id*. This prong "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland* at 688, 104 S.Ct. 2052. And in any case in which an ineffective-assistance claim is raised, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland* at 688, 104 S.Ct. 2052.

{¶ 85} Prevailing professional norms dictate that with regard to decisions pertaining to legal proceedings, "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

{¶ 86} However, counsel's professional duties do not exist in a vacuum. In effectuating legal representation, counsel is bound by the requirements of the Ohio Rules of Professional Conduct. Those rules provide that "a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Prof.Cond.R. 1.2(a). Thus, an attorney has a duty to consult with the client on important matters that arise during the proceedings, and trial counsel does not perform deficiently when counsel heeds the client's wishes as to the objectives of litigation. *See State v. Griffith*, 8th Dist. Cuyahoga No. 97366, 2012-Ohio-2628, 2012 WL 2150477, ¶ 24, citing *State v. Cowans*, 87 Ohio St.3d 68, 80–81, 717 N.E.2d 298 (1999). For example, an attorney typically does not render ineffective assistance "by declining, in deference to a client's desires, to present mitigation." *Cowans* at 81, 717 N.E.2d 298.

{¶ 87} Here, prior to arraignment, the trial court appointed two death-penalty-certified attorneys to represent Obermiller. Before Obermiller entered a guilty plea, defense counsel zealously litigated his case. Counsel filed approximately 30 pretrial motions (including a motion to suppress statements Obermiller had made at the time of his arrest), hired a defense investigator, a mitigation expert, and a psychologist to evaluate Obermiller's competency, and obtained numerous documents regarding Obermiller's history.

{¶ 88} But the record demonstrates that from the earliest stages of this litigation—and even after he withdrew his request for self-representation—Obermiller refused to cooperate with his counsel and rejected their advice regarding most issues. For example, during the evidentiary hearing, the panel offered the defense the opportunity to cross-examine each of the state's 22 witnesses. But defense counsel consistently responded that Obermiller had told them that he did not want them to cross-examine the witnesses.

{¶ 89} Similarly, during the evidentiary hearing, defense counsel raised only a few objections to testimony and exhibits, prompting a panel member to ask whether it was the defense's strategy not to object to inadmissible evidence. Defense counsel candidly

explained that the attorneys were following Obermiller's express instructions not to object. And counsel responded affirmatively when a panel member asked whether the attorneys felt that following Obermiller's orders regarding objections had "interfered with your ability to present the defense that you feel that you could have presented as counsel." Panel members also directly addressed Obermiller, who repeatedly indicated that it was, in fact, his decision to not allow his attorneys to object in most instances and to not allow them to cross-examine witnesses. In addition, Obermiller was provided the opportunity to give a closing argument at the plea hearing, but he refused to allow his counsel to do so.

{¶ 90} Following the panel's finding of guilt as to all counts and specifications in the indictment, Obermiller asked the panel to proceed immediately to sentencing. Obermiller waived mitigation and otherwise would not allow his attorneys to put on any mitigating evidence. And finally, Obermiller would not allow his counsel to give a closing argument at the mitigation hearing.

{¶ 91} Given all of the circumstances, Obermiller has not demonstrated that defense counsel's performance was constitutionally deficient. The record is replete with evidence that Obermiller's objective was to plead guilty as charged and to offer no mitigation during sentencing. Obermiller instructed his counsel to refrain from objecting, cross-examining the state's witnesses, offering opening statements and closing arguments during both phases, and offering any mitigating evidence. Had defense counsel ignored Obermiller's instructions, cross-examination and other tools of advocacy might have interfered with Obermiller's desire to present no defense.

{¶ 92} While we recognize that not every tactical decision requires client approval, *Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, at ¶ 24, there is a difference between the performance of counsel who exercises his or her professional judgment not to pursue a certain trial tactic and the performance of counsel who is being directed by the client not to pursue a certain trial tactic, even against counsel's advice. In this latter circumstance, present here, we conclude that counsel's performance in abiding by Obermiller's instructions was not deficient performance under *Strickland*.

*Prejudice*

{¶ 93} Even assuming that Obermiller could demonstrate that defense counsel performed deficiently, he must also prove that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 94} Obermiller knowingly, intelligently, and voluntarily entered a guilty plea to the indictment and has not challenged his plea on appeal. The three-judge panel conducted an evidentiary hearing under R.C. 2945.06, and, after deliberating, it found "unanimously that the State has produced evidence that convinces the panel beyond a reasonable doubt as to the defendant's guilt as to each essential element of each count and each specification." Because the evidence of Obermiller's guilt was overwhelming,

no reasonable probability could exist that but for counsel's deficiencies, the result of the proceeding would have been different. *Strickland* at 695, 104 S.Ct. 2052.

{¶ 95} Nor can Obermiller establish prejudice regarding his contention that defense counsel was constitutionally ineffective for failing to argue mitigating factors to the panel. Obermiller acknowledges that he voluntarily waived the presentation of mitigating evidence. Yet he argues that despite the waiver of mitigation, "counsel could have and should have taken the opportunity to at least highlight the evidence that had already been presented."

{¶ 96} But the panel independently reviewed the evidence and found that some mitigating evidence had been presented through the testimony of the state's witnesses. In addition, the sentencing opinion identifies the mitigating evidence that the panel took into consideration in its deliberations. Accordingly, even if Obermiller could establish that defense counsel performed deficiently by not presenting mitigating evidence to the panel, he is unable to establish that but for the deficiencies, there is a reasonable likelihood that he would have received a life sentence. The record demonstrates that even without the presentation of a mitigation defense, the panel considered mitigating evidence presented through the witnesses.

{¶ 97} For all these reasons, we reject Obermiller's fourth proposition of law.

*Obermiller*, 147 Ohio St. 3d at 192-95.

Obermiller contends the state court misapplied *Strickland* and its progeny in this decision.

(Doc. 58 at 48.)   The Court disagrees.

First, this Court has found no error in claims underlying several of these ineffective-assistance claims (sub-claims (2), (3), (5), (8), and (9), as listed above), namely:  no trial-court error in denying Obermiller's motion to suppress his admission of guilt to police (Ground 4); no trial-court error in admitting, eliciting, considering, or commenting upon evidence related to Obermiller's invocation of his right to remain silent (Ground 5), his juvenile court record (Ground 5), gruesome photographs of the victims (Ground 6), or Ms. Mikluscak's testimony about him (Ground 5); and no prosecutorial misconduct in offering victim-impact evidence (Ground 8).  *See supra* Sections IV and V(B)(2) through (5), and *infra* Section VII(B)(1).  It follows, therefore, that Obermiller has not shown that he was prejudiced by his counsel's conduct in these respects, and

the claims fail.  *See Henness v. Bagley*, 644 F.3d 308, 319 (6th Cir. 2011) (finding that because the petitioner had not demonstrated that an underlying Fourth Amendment claim had merit, his related ineffective-assistance-of-trial-counsel claim failed, along with the ineffective-assistance-of-appellate-counsel claim) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Wilson v. Parker*, 515 U.S. 682, 707 (6th Cir. 2008)).

And as to the remaining claims addressed by the Ohio Supreme Court on direct appeal (sub-claims (4), (6), and (12)(a), as listed above), Obermiller has not shown that the state-court decision unreasonably applied *Strickland*.  He argues that he was not the "decision maker when it comes to legal strategy," including whether to cross-examine witnesses, investigate and present arguments, and file a brief outlining their mitigation evidence.  (Doc. 58 at 43, 44, 60.)   As explained more fully below, however, the state court reasonably determined that Obermiller's counsel were not deficient in their performance for following their client's explicit instructions.  These claims, therefore, lack merit.

*Sub-Claims (12)(b) and (13)(a) through (d).*  The court of appeals on post-conviction review was the last state court to evaluate Obermiller's claim regarding counsel's investigation of mitigation evidence (sub-claims (12)(b) and (13)(a) through (d)).   After repeating the Ohio Supreme Court's analysis of the claims on direct appeal (*see id*. at 194 (¶ 91)), it addressed the claim's merits, stating:

> {¶39} In any event, a "defense attorney's failure to reasonably investigate a defendant's background and present mitigating evidence * * * at sentencing can constitute ineffective assistance," but a petitioner cannot establish prejudice resulting from counsel's failure to conduct a thorough investigation when the petitioner refuses to allow the presentation of any mitigating evidence at the sentencing hearing. *Henness v. Bagley*, 644 F.3d 308, 323 (6th Cir.2011), citing *Schriro v. Landrigan*, 550 U.S. 465, 476-477, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). *Accord Coleman v. Mitchell,* 244 F.3d 533, 545 (6th Cir.2001) ("An attorney's conduct is not deficient simply for following his client's instructions.").

> {¶40} Accordingly, this claim is without merit.

74

*Obermiller*, 2019 WL 1502500, at *8.

This decision is an "adjudication on the merits" under AEDPA, and this Court is therefore limited in its review to the state-court record.[8]  Obermiller has not specified any defect in the state court's analysis regarding these claims, and this Court finds none.  As the state court made clear, a defense attorney's failure to reasonably investigate a defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance.  *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003); *Williams v. Taylor*, 529 U.S. 362, 395–96 (2000).  But counsel is not ineffective for failing to conduct a thorough mitigation investigation when their client refuses to permit the presentation of mitigation evidence at trial.  *See, e.g.*, *Coleman v. Mitchell*, 244 F.3d 533, 545 (6th Cir. 2001); *Henness v. Bagley*, 644 F.3d 308, 323 (6th Cir. 2011).  Indeed, the *Strickland* Court observed that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."  *Strickland*, 466 U.S. at 491.

In *Coleman v. Mitchell*, *supra*, the petitioner's counsel explained to him the various options for proceeding in the sentencing phase of trial, and the petitioner directed them to present a residual-doubt theory, which did not include the introduction of mitigating evidence relating to his

---

[8] Obermiller has filed a motion to expand the record to include documents that he argues support this claim.  (Doc. 70 at 1.)  However, Because Obermiller's ninth ground for relief was adjudicated on the merits for purposes of AEDPA, and he seeks review of this claim under AEDPA's § 2254(d)(2), this Court must determine whether the state-court decision at issue "was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*."  28 U.S.C. § 2254(d)(2) (emphasis added).  Obermiller's motion to expand the record to include evidence outside the court record, therefore, is denied as to this claim.

past mental health history.  *Coleman*, 644 F.3d at 545.  On habeas review, however, the petitioner claimed that his counsel was ineffective for following his instructions, because they should have realized that he lacked the competence needed to choose an appropriate sentencing strategy.  *Id.* The circuit court noted that the petitioner was competent to stand trial and competent to assist his lawyer with strategic choices regarding mitigation.  *Id.* (applying the standard established in *Godinez v. Moran*, 509 U.S. 389, 399 (1993), which held that competency to waive counsel must meet the standard of competency to stand trial, to petitioner's competency to instruct his counsel as to the appropriate strategy to pursue at sentencing).  And in such circumstances, it held, "[a]n attorney's conduct is not deficient simply for following his client's instructions."  *Id.*

In *Henness v. Bagley*, *supra*, the Sixth Circuit further held that, even if it assumed counsel's performance were deficient for failing to conduct a thorough investigation of mitigating factors, a habeas petitioner cannot establish prejudice under *Strickland* when he or she refused to allow the presentation of any mitigating evidence at the sentencing hearing.  *Henness*, 644 F.3d at 323 (citing *Schriro v. Landrigan*, 550 U.S. 465, 480-81 (2007); *Owens v. Guida*, 549 F.3d 399, 412 (6th Cir. 2008)).

Here, as will be explained in detail below, this Court finds reasonable the Ohio Supreme Court's conclusion that Obermiller was competent to waive the presentation of mitigation evidence, based on the court-ordered report of Dr. Phillip Resnick.  *See infra* Section VIII(B)(1)). Additionally, the three-judge panel conducted a careful and exhaustive examination on the record of Obermiller and his attorneys regarding Obermiller's competency to waive mitigation, filling more than fifty pages of transcript, on this issue.  The panel ensured that Obermiller clearly and unequivocally expressed his intention to forgo the presentation of mitigating evidence; and that he understood from counsel his right to present mitigating evidence, the nature of the mitigating

evidence he could expect to present, and the consequences of failing to present such evidence. (*See* Doc. 17-1 (Trial Tr.) at 1391-1408, 1439-73.)

Obermiller's related claims regarding his instructions to counsel to not present mitigation evidence (sub-claims (12)(b) and (13)(e) and (f), as listed above) fail for the same reasons, even when reviewed *de novo* because they were never addressed in state court.  Counsel were not ineffective for failing to prevent Obermiller from waiving his right to present mitigation evidence when they explained to him, and he understood, the implications of his waiver.  *See Coleman v. Mitchell*, 268 F.3d 417, 447–49 (6th Cir. 2001) (counsel's effectiveness in connection with defendant's instruction not to present mitigating evidence determined in light of whether defendant's decision was knowing and informed).  And, as explained above, counsel were not ineffective for failing to investigate and discover prison medical records and his relationship with a female correctional officer at the juvenile corrections facility when Obermiller instructed them not to present any mitigation evidence at trial.[9]

Accordingly, Obermiller's claims of ineffective assistance of counsel related to his waiver of the right to present mitigation evidence are without merit.

*Sub-Claims (1), (7), (10), and (11).*  The remaining sub-claims ((1), (7), (10), and (11), as listed above) also fail.  As to Obermiller's claim that his trial counsel were ineffective for failing

---

[9] Obermiller's motion to expand the record with documents relating to these claims (Doc. 70 at 1) is also denied. A district court may expand the record to include evidence supporting a claim that was not adjudicated on the merits in state court if the petitioner diligently attempted to present those facts in state court or alternatively meets AEDPA's narrow exception for evidence of actual innocence. *Stermer v. Warren*, 959 F.3d 704, 722 (6th Cir. 2020) (citing *Williams v. Taylor*, 529 U.S. 420, 431–32, 437 (2000); *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013); 28 U.S.C. § 2254(e)(2); *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 465 (6th Cir. 2012)); *see also* Rules Governing Habeas Corpus Cases Under Section 2254, R. 7.  Obermiller has not met that burden here.

to investigation his mental health before he plead guilty, this Court has found no error in the trial court's finding that he was competent to change his pleas to guilty and waive a jury trial (Ground 2). *See supra* Section II(B). It follows, therefore, that Obermiller has not shown that he was prejudiced by his counsel's conduct in this regard, and the claims is unfounded. *See Henness*, 644 F.3d at 319.

The remaining sub-claims are unsupported by sufficient developed argumentation. Obermiller argues in a conclusory fashion that counsel were ineffective for failing to move to suppress his cell phone records, but makes no argument whatsoever demonstrating that such a motion would have been successful. (*See* Doc. 44 at 99-100.) He also contends they were deficient in disclosing information on the record that was protected by the attorney-client privilege, but again offers no argument as to how those alleged breaches of privilege harmed his case. (*See id*. at 102.) And he asserts with no support that counsel were ineffective "[t]o the extent" they failed to "preserve all meritorious issues for appellate review." (*Id*. at 102.) These claims are insufficiently developed and are therefore waived. *See, e.g., United States v. Crosgrove,* 637 F.3d 646, 663 (6th Cir. 2011) ("Because there is no developed argumentation in these claims, the panel declines to address [the defendant's] general assertions of misconduct in witness questioning and closing statements."); *United States v. Hall*, 549 F.3d 1033, 1042 (6th Cir. 2008) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006)).

Accordingly, Obermiller's second, seventh, tenth, and eleventh grounds for relief are denied.

## VII.  Eighth Ground for Relief:  *Prosecutorial Misconduct*

For his eighth ground for relief, Obermiller contends that the prosecution violated his due process rights when it introduced improper evidence at trial, including: (1) victim-impact evidence; and (2) "prejudicial innuendo" through the testimony of Natasha Branam about images found on a computer in the Schneiders' home.  (Doc. 44 at 102-05.)  Respondent asserts that these claims are procedurally defaulted and/or without merit.  (Doc. 48 at 73-75.)

### A.  Procedural Status

Obermiller raised these claims on direct appeal to the Ohio Supreme Court.  *Obermiller*, 147 Ohio St. 3d at 195-97.  Respondent argues that "insofar as" the Ohio Supreme Court applied Ohio's contemporaneous objection rule to this claim and reviewed it only for plain error, the claim is procedurally defaulted.  (Doc. 47 at 74.)  Obermiller responds that the state court "reached the merits of Obermiller's claims, thus this Court can address the merits as well."  (Doc. 58 at 49.)

The Ohio high court, noting defense counsel's failure to object, asserted the procedural bar of the contemporaneous objection rule to the sub-claim alleging improper victim-impact evidence. *Obermiller*, 147 Ohio St. 3d at 195-96 (¶ 100).  As noted above, failure to adhere to the "firmly-established" contemporaneous objection rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted.  *E.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006).  And a state court's plain-error analysis "cannot resurrect an otherwise defaulted claim." *Stewart v. Trierweiler,* 867 F.3d 633, 638 (6th Cir. 2017).  This claim, therefore, is procedurally defaulted.  Moreover, Obermiller offers no argument regarding the cause for, or prejudice resulting from, the defaults, or that he is actually innocent.

Obermiller's second prosecutorial-misconduct sub-claim, relating to Branam's testimony, was adjudicated on the merits and is ripe for habeas review.

### B.  Merits Analysis

Even if both of Obermiller's prosecutorial-misconduct sub-claims were preserved for review, they would not prevail. In rejecting these claims, the state court began:

{¶ 98} In proposition of law No. 6, Obermiller argues that the prosecutor's cumulative misconduct rendered his trial unfair in violation of his rights under the federal and state Constitutions. *See* Fourteenth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 16.

{¶ 99} To evaluate a claim of prosecutorial misconduct, we must determine whether the challenged conduct was improper and, if so, whether it prejudicially affected the defendant's substantial rights. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 243. The benchmark of the prosecutorial-misconduct analysis is "'the fairness of the trial, not the culpability of the prosecutor.'" *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 135, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

*Obermiller*, 147 Ohio St. 3d at 195.

## 1. Victim-impact evidence

The state court then addressed Obermiller's claim regarding the prosecution's introduction of victim-impact evidence:

{¶ 100} First, Obermiller contends that the prosecutor improperly elicited victim-impact evidence. We review this claim for plain error because Obermiller did not object. *See State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 89.

{¶ 101} The United States Supreme Court has described victim-impact testimony in a capital case as "evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family." *Payne v. Tennessee*, 501 U.S. 808, 817, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). And we have "permitted victim-impact testimony in capital cases when the testimony * * * was not overly emotional or directed to the penalty to be imposed." *State v. Hartman*, 93 Ohio St.3d 274, 292, 754 N.E.2d 1150 (2001).

{¶ 102} Obermiller describes the challenged testimony as improperly "painting the victims as kind and giving and Obermiller as taking advantage of that kindness." Obermiller also claims that this evidence was inadmissible and collateral, and he argues, quoting *State v. White*, 15 Ohio St.2d at 151, 239 N.E.2d 65, that it "'inflame[d] the passion of the jury.'"

{¶ 103} Specifically, Obermiller contends that the state introduced improper victim-impact evidence from Candace Flagg, a granddaughter of Candace Schneider. Flagg's testimony was crucial to establish the timeline of events leading up to the discovery of

the bodies by police. Flagg also provided background information about the victims, including details about their personal property and interests, and she discussed Obermiller's relationships with various family members. For instance, Flagg testified that Candace Schneider had sent Obermiller care packages while he was incarcerated, had allowed Obermiller to have access to the Schneiders' campsite where they had a camper parked, and had allowed Obermiller to reside with the Schneiders upon his release from prison in 2009, even though Donald was opposed to it.

{¶ 104} Obermiller argues that the panel then "picked up on this theme" because when the panel later recalled Obermiller's former girlfriend, Gina Mikluscak, and it called Stacy Muzic, Obermiller's former stepmother, to the stand, the panel asked both of them questions that led to testimony about Candace's good nature. But the evidence in the record does not support Obermiller's contention that the panel considered improper victim-impact evidence in arriving at its decision. First, the usual presumption that the panel considered only relevant evidence applies here. Next, the evidence was not "overly emotional" and was not "directed to the penalty," and thus, it was permissible. *Hartman*, 93 Ohio St.3d at 293, 754 N.E.2d 1150. Third, to the extent that the panel elicited some of this evidence, Obermiller cannot establish prosecutorial misconduct. We cannot say that but for the error, the outcome of the trial clearly would have been otherwise. Accordingly, we reject Obermiller's argument that improper victim-impact testimony prejudiced the outcome of his case.

*Obermiller*, 147 Ohio St. 3d at 195-96.

Although the Ohio Supreme Court reviewed Obermiller's victim-impact sub-claim only for plain error, it is entitled to AEDPA deference.  AEDPA applies to a state court's plain-error analysis if it "'conducts any reasoned elaboration of an issue under federal law,'" which the state court did here.  *Stewart*, 867 F.3d at 638 (quoting *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009)).

The Supreme Court established the test for claims of prosecutorial misconduct in *Darden v. Wainwright*, 477 U.S. 168 (1986): "The relevant question is whether the prosecutors' [conduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983), and *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  The Court emphasized that "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the

broad exercise of supervisory power.'"  *Id.* (quoting *Donnelly,* 416 U.S. at 642); *see also Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) ("We do not possess supervisory powers over state court trials."); *Cook v. Bordenkircher*, 602 F.2d 117, 119 n.5 (6th Cir. 1979) ("[I]t is the responsibility of the [state courts] to police their prosecutors; we have no such authority.").  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct," therefore, "is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The *Darden* standard "is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations' . . . ."  *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (rejecting the Sixth Circuit's multi-step test for prosecutorial misconduct).

The Court removed any per se constitutional bar to a prosecutor's use of victim-impact evidence in *Payne v. Tennessee*, 501 U.S. 808 (1991), recognizing that where "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause . . . provides a mechanism for relief."  *Id*. at 825 (citing *Darden*, 477 U.S. at 179-83).  "[E]xcessive or prejudicial references to victim-impact evidence might 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Beuke v. Houk,* 537 F.3d 618, 648 n.9 (6th Cir. 2008*)* (citations omitted).

Obermiller argues that the state court's decision unreasonably applied *Payne* because the information the prosecution elicited about Mrs. Schneider from her granddaughter was not "'background information,'" as the court concluded, but was intended to portray a "loving grandmother who[m] Obermiller killed in a violent, sexual manner" – the precise type of inflammatory evidence *Payne* forbids.  (Doc. 58 at 52.)  He provides no further analysis or authority for this proposition.  Regardless, this Court disagrees.

As noted in this Court's analysis of Obermiller's claims of evidentiary error based on similar remarks by the prosecution or witnesses, *see supra* Section V(B), the panel presumably considered only relevant evidence.  In addition, the state court reasonably found the evidence was neither overly emotional nor related to sentencing.  The Ohio Supreme Court reasonably found no due process violation with regard to this testimony, and its decision neither contravened nor misapplied Supreme Court precedent.

### 2.  Branam's testimony

Regarding the prosecution's introduction of Branam's testimony, the Ohio Supreme Court decided:

> {¶ 105} Alleging prosecutorial misconduct, Obermiller again argues that the state placed "prejudicial innuendo" in the record during Natasha Branam's testimony about images found on a computer in the Schneiders' home. To demonstrate prejudice in this context, "a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred." *State v. Collier*, 8th Dist. Cuyahoga No. 78960, 2001 WL 1243925, *5 (Oct. 18, 2001), citing *State v. Campbell*, 69 Ohio St.3d 38, 51, 630 N.E.2d 339 (1994).

> {¶ 106} For the same reasons we previously rejected Obermiller's plain-error challenge to this information, we conclude that Obermiller cannot establish prejudice in this context. The prosecutor's statements regarding Branam's potential testimony were offered to a three-judge panel, "which is presumed to consider only relevant, competent and admissible evidence in its deliberations." *Davis*, 63 Ohio St.3d at 48, 584 N.E.2d 1192. Moreover, immediately before Branam began to testify after being recalled by the panel, a panel member specifically stated: "Let's see what's relevant and we'll disregard what isn't relevant, and consider what is." There is nothing in the record demonstrating that the panel considered the prosecutor's statements about Branam's possible testimony in its deliberations regarding Obermiller's guilt or his sentence.

> {¶ 107} In sum, we conclude that Obermiller failed to establish that prosecutorial misconduct infected either phase of his capital trial, and we reject proposition of law No. 6.

*Obermiller*, 147 Ohio St. 3d at 197.

Obermiller offers this one-sentence argument for why this decision was unreasonable: "Despite the clear factual record, the Ohio Supreme Court continued to presume the three-judge

panel disregarded evidence they clearly considered."  (Doc. 58 at 53.)  Again, there was nothing improper in the remarks at issue, as the panel was presumed to consider only relevant evidence and Obermiller failed to show that the panel considered them in its deliberations.  *See supra* Section V(B)(1).  This claim also fails.

## VIII.  Ninth and Sixteenth Grounds for Relief:  *Mitigation Waiver*

For his ninth and sixteenth grounds for relief, Obermiller challenges the validity of his waiver of the right to present mitigation evidence at the sentencing phase of his trial.  (Doc. 44 at 106-08, 154-56.)  He claims that:  (1) he was not competent to waive the right (Ground 9); and (2) the waiver violated his federal constitutional rights (Ground 16).  (*Id.*)

### A.  Procedural Status

Respondent argues that both of these grounds for relief are procedurally defaulted.  (Doc. 47 at 76, 86.)

#### 1.  Competence to waive mitigation

Obermiller raised a claim that he was not competent to waive mitigation in state court only on post-conviction review.  The last court to address the claim was the state appellate court, which, as quoted below, found its review precluded by res judicata because Obermiller did not raise the record-based claim on direct appeal.  *See Obermiller*, 2019 WL 1502500, at *9 (¶ 48).  The court also conducted a merits review of the claim (*id.* (¶¶ 49, 50)), but that alternative analysis does not revive a defaulted claim for purposes of federal habeas review.  *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989).

Obermiller counters, with scant analysis, that the state court misapplied the state's res judicata bar, excusing the procedural default and preserving the claim for federal habeas review. (Doc. 58 at 53-54.)  As explained above, *see supra* Section II(A), habeas courts may decline to

observe a state court's incorrect application of the res judicata rule and review federal claims.  *See, e.g., Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012); *Richey v. Bradshaw*, 498 F.3d 344, 359 (6th Cir. 2007).

Obermiller argues that the state post-conviction appellate court misapplied the res judicata bar to preclude review of this claim because he submitted extra-record evidence to support the claim with his amended post-conviction petition.  (Doc. 58 at 53-54.)  He identifies in his briefs only information about his "overdose" and "solitary confinement," as relevant to the issue of his competency to waive mitigation, with no citation to the record or analysis.  (*See id.* at 54.)  Yet in his post-conviction petition, Obermiller cited Exhibits 20-32 and 35 as support for his mitigation-waiver claim.  (Doc. 30-6 at 264-66 (Amended Post-Conviction Pet.).)  These exhibits were:  (1) his own affidavit (Doc. 30-2 at 291 (Ex. 20)); Social Security Administration records (*id.* at 292-344 (Ex. 21)); Ohio Department of Rehabilitation and Corrections records (*id.* at 348-715 (Ex. 23)); Cuyahoga County Department of Children and Family Services records (Doc. 30-3 at 4-515, Doc. 30-4 at 4-510 (Ex. 24)); juvenile court records (Doc. 30-5 at 4-264 (Ex. 25)); affidavit of Felicia Crawford (Doc. 30-6 at 219-22 (Ex. 26)); affidavit of Gina Mikluscak (Doc. 30-5 at 265-69 (Ex. 27)); affidavit of Denny Lykins (*id.* at 270-75 (Ex. 28)); affidavit of Nabil Lykins (*id.* at 276-80 (Ex. 29)); affidavit of Ian Cultrona (*id.* at 281-86 (Ex. 30)); affidavit of Jacob Muzic (*id.* at 287-89 (Ex. 31)); affidavit of Maxine Muzic (Doc. 30-6 at 223-26 (Ex. 32)); affidavit of social worker and mitigation specialist Dorian Hall (*id.* at 284-314 (Ex. 35)); and affidavit of psychologist Dr. Nancy Schmidt-Goessling (*id.* at 421-53 (Ex. 36)).[10]

---

[10] Dr. Schmidt-Goessling's report is listed as Exhibit 22 on the petition's list of exhibits (Doc. 30-2 at 346-47), but was submitted to the state court separately from the petition as Exhibit 36. There also was a second Exhibit 36, a transcript of an interview of Ian Cuttrona, submitted separately from the conviction petition.  (*See* Doc. 30-6 at 315-42.)

This evidence, while voluminous, does not demonstrate that Obermiller could not have appealed his claim challenging his competency to waive mitigation based on information in the original trial record. *Lawson*, 103 Ohio App. 3d 307, 315. As the Court will explain in detail in its merits analysis below, it is clear from the trial record that Obermiller was competent to waive the presentation of mitigation evidence; most of the evidence he presented in post-conviction proceedings was irrelevant or immaterial to this claim, or cumulative to evidence presented at trial. This claim is procedurally defaulted.

Obermiller further argues that, even if the state court applied the bar correctly and the claim is procedurally defaulted, the default should be excused because it was caused by the ineffective assistance of his post-conviction counsel for failing to provide a report from an expert on the effects of solitary confinement in prison. (Doc. 58 at 54.) Ineffective assistance of post-conviction counsel, however, may establish cause for the procedural default only of claims of ineffective assistance at trial counsel. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Hodges v. Colson*, 711 F.3d 589, 602-03 (6th Cir. 2013).

### 2. Constitutionality of mitigation waiver

Respondent argues that Obermiller never raised a claim that the Constitution required the trial court to reject Obermiller's waiver of mitigation and compel him to present mitigation evidence against his wishes. (Doc. 47 at 86.) Obermiller responds that he "raised a substantially similar claim" in the court of appeals on post-conviction review. (Doc. 58 at 84 (citing Doc. 30-7 at 416-18).) The Court disagrees. A review of the record shows that Obermiller challenged only his competency to waive mitigation in either the state trial or appellate court – not the constitutional

validity of such waivers. (*See* Doc. 30-6 at 261-63 (Am. Post-Conviction Pet.); Doc. 30-7 at 235-39 (Appellant Merit Brf.).) This claim arises out of the record of proceedings in the trial court, and therefore could have been raised on direct appeal, but Obermiller failed to do so and no longer may. Obermiller also provides no cause for, or prejudice resulting from, or actual innocence to excuse the default. This claim also is procedurally defaulted.

### B. Merits Analysis

Even if both claims related to Obermiller's waiver of the presentation of mitigation evidence were ripe for federal habeas review, they would fail.

#### 1. Competency to waive mitigation

As noted above, Obermiller did not challenge his waiver of mitigation on direct review to the Ohio Supreme Court. But the Ohio Supreme Court, in its independent evaluation of his sentence, however, made the following findings relating to the waiver and the mitigation evidence presented at trial:

> {¶ 140} Immediately after the panel announced its verdict finding Obermiller guilty of every count in the indictment, one of his defense attorneys stated: "After having discussions with Mr. Obermiller over the course of our representation, it's his intent to offer no mitigation." At that time, Obermiller also waived the opportunity to request a presentence investigation report and a court psychiatric evaluation.

> {¶ 141} On its own initiative, the panel ordered Obermiller to be evaluated by the Cuyahoga County Court Psychiatric Clinic for assessment of his competency to waive mitigation. The court psychiatric clinic issued a report determining that Obermiller was competent to waive mitigation, and the parties stipulated to the findings and conclusions in the psychiatric report provided to the court. In particular, the report stated that "although Mr. Obermiller has Major Depressive Disorder, in Partial Remission, he understands the choice between life and death and has the capacity to knowingly and intelligently decide not to pursue mitigation." Accordingly, the panel conducted a waiver colloquy with Obermiller and reasonably concluded that his decision to waive mitigation was knowing, intelligent, and voluntary. *State v. Ashworth*, 85 Ohio St.3d 56, 62, 706 N.E.2d 1231 (1999).

*Obermiller*, 147 Ohio St. 3d at 204.

The state court of appeals, the last court to review Obermiller's claim on post-conviction review that he was not competent to waive mitigation, decided:

{¶46} Obermiller next asserts that the trial court erred in rejecting his claim that he lacked competence to waive a mitigation hearing. Specifically, he argues that he had been prescribed Lithium prior to the offenses, but at the time he waived mitigation, he was receiving different medications that impacted his mental state and caused him to waive the presentation of mitigating evidence at trial.

{¶47} In *State v. Ashworth*, 85 Ohio St.3d 56, 1999-Ohio-204, 706 N.E.2d 1231, the Ohio Supreme Court held that a waiver of the presentation of mitigating evidence must be knowing and voluntary, and that to ensure this, the trial court must conduct an inquiry of the defendant on the record. *Id.* at paragraph one of the syllabus. The record must affirmatively demonstrate that (1) the court has informed the defendant of the right to present mitigating evidence, (2) the court has explained what mitigating evidence is, (3) the defendant understands the importance of mitigating evidence, (4) the defendant understands the use of mitigating evidence to offset the aggravating circumstances, (5) the defendant understands the effect of failing to present mitigating evidence, and (6) the defendant wishes to waive mitigation. *Id.* at 62, 706 N.E.2d 1231.

{¶48} In the direct appeal of this case, the Ohio Supreme Court noted that the trial court conducted an *Ashworth* hearing prior to accepting Obermiller's waiver of mitigation and "reasonably concluded that his decision to waive mitigation was knowing, intelligent, and voluntary." *Obermiller I*, 147 Ohio St.3d 175, at fn. 3, ¶ 141, 63 N.E.3d 93. The court further noted that Obermiller was not challenging the *Ashworth* hearing on appeal. *Id.* at fn. 3. Accordingly, this claim is barred by res judicata.

{¶49} In any event, the record indicates that the trial court fully complied with *Ashworth*. Further, as explained by the trial court:

[Obermiller] insisted repeatedly that his counsel not put forth any evidence in the mitigation phase. Furthermore, as previously stated, [Obermiller] was found competent to waive mitigation by the Court Psychiatric Clinic.

{¶50} Moreover, our review of the record demonstrates that the state's expert, Dr. Phillip Resnick, provided the court with a detailed report outlining Obermiller's history of substance abuse and psychiatric history. Dr. Resnick also "systematically screened Mr. Obermiller for current symptoms of depression, mania * * *, psychosis * * *, posttraumatic stress disorder * * *, and anxiety disorders[.]" Additionally, Dr. Resnick determined that Obermiller had "insight into his current situation and [h]is judgment was fair based upon his response to hypothetical situations." Obermiller did not have delusions or hallucinations. Dr. Resnick also remarked that Obermiller "never changed or regretted his decision to plead guilty," his decision to waive mitigation was "firm," and he has "never changed in his desire to receive a death sentence." Dr. Resnick was fully qualified to evaluate whether Obermiller's prescription medications would have

affected his competency. *Accord State v. Mink,* 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 30-34. Therefore, this assigned error lacks merit.

*Obermiller*, 2019 WL 1502500, at *9.

As explained above, the state court's alternative merits review of this claim constitutes an adjudication on the merits that is afforded AEDPA deference.  *See, e.g., Brooks v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008)).  Obermiller contends this decision was based on unreasonable findings of fact under § 2254(d)(2).  (Doc. 58 at 56.) [11]  His sole argument is that the state court "unreasonably relied on" Dr. Resnick's evaluation, which "failed to account for" his bipolar disorder, extended period in solitary confinement in prison, drug overdose, and health conditions, resulting in an "erroneous conclusion."  (*Id*.)

In *Johnson v. Zerbst*, the Supreme Court held that courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights."  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks and citations omitted).  Such a waiver, it established, must be "intentional" and "intelligent."  *Id*.  Since then, the Court has recognized many constitutionally protected trial rights as fundamental and subject to *Zerbst*'s knowing and intelligent waiver requirement.  *See Schriro v. Landrigan*, 550 U.S. 465, 485 n.2 (2007) (listing cases).  But the Court has "never imposed an 'informed and knowing' requirement upon a

---

[11] Obermiller has filed a motion to expand the record to include documents that he argues support this claim.  (Doc. 70 at 1.)  However, Because Obermiller's ninth ground for relief was adjudicated on the merits for purposes of AEDPA, and he seeks review here under AEDPA's § 2254(d)(2), this Court must determine whether the state-court decision at issue "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Obermiller's motion to expand the record to include evidence outside the court record, therefore, is denied as to this claim.

.

defendant's decision not to introduce [mitigating] evidence" or "required a specific colloquy to ensure that a defendant knowingly and intelligently refused to present mitigating evidence." *Id.* at 479; *see also Cowans v. Bagley*, 639 F.3d 241, 246 (6th Cir. 2011).

Moreover, as explained above, this Court must defer under § 2254(d)(2) and apply the presumption of correctness found in § 2254(e)(1) to the state court's factual determinations regarding the validity of Obermiller's mitigation waiver. 28 U.S.C. § 2254(d)(2), (e)(1); *Miller-El v. Cockrell*, 537 U.S. 332, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2) . . . .").

In this case, Obermiller has not identified one clearly erroneous factual determination upon which the court based its conclusion that he was competent to waive mitigation. Indeed, the appellate court's factual findings were reasonable and well supported by the record. Contrary to Obermiller's assertion, as the state court explained, in his report, Dr. Resnick thoroughly (to the extent he could in light of Obermiller's documented refusal to release prison medical records) and credibly addressed Obermiller's psychiatric, medical, and substance abuse history, including his attorney's remark that he "probably" was diagnosed with bipolar disorder and Obermiller's statement that shortly after he was imprisoned after the murders he overdosed on Klonopin, a medication prescribed to treat anxiety. (*See* Doc. 30-1 at 626-30 (Resnick Rpt.).) Dr. Resnick further noted that he screened Obermiller for current symptoms of substance abuse and a variety of mental health disorders, and diagnosed major depressive disorder, recurrent, in partial remission. (*See id.* at 628-30.) And, as the appellate court also explained, Dr. Resnick provided

a detailed account of his interview with Obermiller regarding his waiver.  (*See id*. at 630-31.)
There was nothing "erroneous" about Dr. Resnick's findings or conclusion.

This Court further notes that the trial record demonstrates that in addition to ordering and
considering Dr. Resnick's report regarding Obermiller's competency to waive mitigation, the
three-judge panel conducted a careful and exhaustive examination on this issue, on the record, of
Obermiller and his attorneys, filling more than fifty pages of transcript.  The panel ensured that
Obermiller had clearly and unequivocally expressed his intention to forgo the presentation of
mitigating evidence; and that he understood he had the right to present mitigating evidence, the
nature of the mitigating evidence he could expect to present, and the consequences of failing to
present such evidence.  (*See* Doc. 17-1 (Trial Tr.) at 1391-1408, 1439-73.) The state appellate
court's decision, therefore, was not based on unreasonable determinations of fact, and this claim
lacks merit.

### 2.  Constitutionality of mitigation waiver

Obermiller also argues that the three-judge panel violated his constitutional rights by
permitting him to waive the presentation of mitigation evidence.  (Doc. 58 at 83-87.)  He relies
primarily on a line of Supreme Court cases establishing a capital defendant's right to present
individualized mitigation evidence at sentencing, including *Payne v. Tennessee*, 501 U.S. 808, 822
(1991) ("We have held that a State cannot preclude the sentencer from considering 'any relevant
mitigating evidence' that the defendant proffers in support of a sentence less than death.") (quoting
*Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982)); *Lockett v. Ohio*, 438 U.S. 586, 606 (1978)
(holding that Ohio's death penalty statute failed to "permit the type of individualized consideration
of mitigating factors we now hold to be required by the Eighth and Fourteenth Amendments in
capital cases"); and *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (stating that the

Constitution "requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death"), and the Court's precedent regarding a defendant's right to self-representation, including *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152 (2000), and *Faretta v. California*, 422 U.S. 806 (1975).  (*Id.* at 84-86.)

As the Sixth Circuit has recognized, however, "The Supreme Court has never held that the Eighth Amendment or any other constitutional provision requires a defendant to present mitigating evidence at the sentencing phase of a capital trial. The Court, in point of fact, has suggested otherwise." *Cowans v. Bagley*, 639 F.3d 241, 246–48 (6th Cir. 2011) (citing *Schriro v. Landrigan*, 550 U.S. 465 (2007)).  This claim, therefore, also fails.

## IX.  Twelfth Ground for Relief:  *Jury Selection*

Obermiller challenges the racial composition of the grand jury in his twelfth ground for relief.  (Doc. 44 at 68-73.)  Obermiller raised this claim in state post-conviction proceedings, and it is ripe for federal habeas review.  The state post-conviction appellate court was the last state court to review this claim, opining:

> {¶28} Obermiller next argues that the trial court erred in overruling his fourth claim for relief in which he argues that the foreman of the grand jury that initially indicted him (issuing a 13-count indictment alleging capital murder and other offenses) was African-American, but the foreman of the second grand jury that indicted him (in a 19-count indictment that alleged capital murder and other offenses) was Caucasian, and his conviction is based upon the second indictment.

> {¶29} Evidence as to the manner by which the grand jury foreperson was chosen could have been sought prior to Obermiller's trial. *State v. Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651, ¶ 68.

> {¶30} In any event, in *State v. Hughbanks,* 1st Dist. Hamilton No. C-010372, 2003-Ohio-187, the court explained this challenge as follows:

>> If a grand-jury foreperson is selected from within the ranks of a properly constituted grand jury, and the foreperson's role is essentially ministerial, purposeful

discrimination in the selection of a grand-jury foreperson will not provide a basis for reversing a conviction or dismissing an indictment. *See Hobby v. United State*s (1984), 468 U.S. 339, 344, 104 S.Ct. 3093, 82 L.Ed.2d 260. If, on the other hand, the foreperson is selected from outside the system used to compose the balance of the grand jury, but possesses the same voting power as the other grand jurors and takes on, by virtue of the status of foreperson, duties that are merely ministerial in nature, we must treat a claim of discrimination in the selection of the grand-jury foreperson as one alleging discrimination in the composition of the grand jury itself. *See Campbell v. Louisiana* (1998), 523 U.S. 392, 396-397, 118 S.Ct. 1419, 140 L.Ed.2d 551.

To prove purposeful discrimination in the selection of grand jurors, the accused must demonstrate that the procedure employed to select the grand jurors resulted in "substantial underrepresentation" of an "identifiable group." To show substantial underrepresentation, and thus establish a prima facie case of purposeful discrimination, the accused must (1) "establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied," (2) prove "the degree of underrepresentation * * *, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time," and (3) support "the presumption of discrimination raised by the statistical showing" with proof that "the selection procedure * * * is susceptible of abuse or is not racially neutral." Once the defendant has established a prima facie case of discriminatory purpose, the burden shifts to the state to rebut that case. *Id.* at 494-495, 13 N.E.3d 1051, ¶ 183, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498.

Hughbanks offered in support of his petition evidence to show that African-American and female residents of the county were "seriously underrepresented" as grand-jury forepersons. The record is unclear, however, concerning the precise procedure employed by the county to select the foreperson for the grand jury that indicted him. And Hughbanks presented no evidence that that procedure, whatever its particulars, resulted in substantial underrepresentation of either African-Americans or women on his grand jury or on grand juries over a significant period of time.

Thus, the evidence offered in support of the fourth claim failed to establish a prima facie case of purposeful discrimination in the selection of grand jurors.

*Id*. at ¶ 35-39.

{¶31} In this matter, the record is unclear as to how the grand jury foreman was selected, and there has been no evidence that the procedure employed by the county to select the foreperson resulted in substantial underrepresentation of either African-Americans or women on his grand jury or on grand juries over a significant period of time. Obermiller merely asserted that the first foreman, who presided over the grand jury that issued capital murder charges, was African-American, and the second foreman, who also

presided over a grand jury that issued capital charges, was Caucasian. Accordingly, the trial court properly rejected this claim.

{¶32} The fifth assigned error is without merit.

*Obermiller*, 2019 WL 1502500, at *6-7.

Obermiller asserts that the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent because the court "entirely failed to grapple with the argument regarding voter registration and the process by which Ohio grand juries are drawn." (Doc. 58 at 72.)

The Sixth Amendment guarantees criminal defendants a jury selected from a fair cross-section of the community. *Duren v. Missouri,* 439 U.S. 357 (1979). The *Duren* Court set forth three criteria necessary to establish a *prima facie* violation of the fair-cross-section requirement: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364. Even if a defendant has established a *prima facie* fair-cross-section violation, the government may overcome the right to a proper jury by proffering a significant state interest that manifestly and primarily advances "those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Id.* at 367-68.

The selection of juries also must comply with the Equal Protection Clause of the Fourteenth Amendment. *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127 (1994). The Supreme Court has long recognized that racial exclusions and substantial underrepresentation in juries deny defendants equal protection under the law. *Castaneda v. Partida*, 430 U.S. 482, 492-93 (1977). Traditionally,

to show that an equal protection violation has occurred in this context, the defendant must satisfy the three-part test established in the Supreme Court decision *Castaneda v. Partida*. *United States v. Ovalle,* 136 F.3d 1092, 1104 (6th Cir. 1998). The defendant must demonstrate: (1) "'the group excluded from the grand jury is one that is a recognizable, distinct class capable of being singled out for different treatment under the laws'"; (2) the selection procedure was "'susceptible to abuse or is not racially neutral'"; and (3) "'the degree of underrepresentation occurring over a significant period of time by comparing the proportion of the excluded group in the total population to the proportion serving as grand jurors.'" *Id*. (quoting *Jefferson v. Morgan,* 962 F.2d 1185, 1188-89 (6th Cir. 1992)). Once a defendant has established a *prima facie* case, the burden shifts to the state to rebut the inference of intentional discrimination. *Id*.

As the state court reasonably determined, Obermiller has not met his burden to obtain relief for either an equal-protection or fair-cross-section violation. He has not demonstrated how the grand jury forepersons were selected or how that selection process resulted in substantial underrepresentation of African Americans. Nor has he provided any evidence to support his claim that Cuyahoga County's practice of drawing names of potential jurors from voter registration lists systematically excludes African Americans, as they are typically underrepresented on those lists due to the group's lower voting participation and other socio-economic reasons. (Doc. 58 at 72.) Indeed, the Sixth Circuit has recognized that "[v]oter registration lists are the presumptive statutory source for potential jurors." *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) (citing 28 U.S.C. § 1863(b)). Circuit courts agree that the Constitution has never held that a trial court needs to supplement the voter rolls with additional names "'simply because an identifiable group votes in a proportion lower than the rest of the population.'" *Id*. (quoting *United States v. Test*, 550 F.2d 577, 587 n.8 (10th Cir. 1976)). Obermiller provides no reason to diverge from this precedent.

The state appellate court's decision rejecting this claim, therefore, neither contravened nor misapplied Supreme Court precedent.

## XI.  Thirteenth Ground for Relief:  *Sentencing*

For his thirteenth ground for relief, Obermiller argues that the trial court erred in its sentencing opinion by:  (1) improperly weighing the specification for felony murder based on his rape of his grandmother in sentencing him for the murder of his grandfather; and (2) improperly considering nonstatutory aggravating circumstances developed through its examination of a witness.  (Doc. 58 at 73-76.)  Obermiller raised these claims on direct appeal to the Ohio Supreme Court, which adjudicated them on the merits, and they are preserved for federal habeas review.

### A.  Improper Aggravating Circumstances

In considering Obermiller's claim regarding improper aggravating circumstances, the Ohio Supreme Court ruled:

{¶ 113} Obermiller argues that in its sentencing opinion, the three-judge panel improperly weighed the specification for felony murder predicated on rape that was applicable only to Candace's murder when it sentenced him for Donald's murder.

{¶ 114} The sentencing opinion states:

After merger of the counts, this Court proceeded to the second phase of this trial. Defendant pled guilty to the indictment and was convicted of *three aggravating circumstances that were alleged as part of Counts 1 and 4,* namely:

1.  That the aggravated murder was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons, namely, Donald and Candace Schneider. R.C. 2929.04(A)(5).

2.  That the Defendant committed the Aggravated Murders while he was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the rape of Candace Schneider. R.C. 2929.04(A)(7).

3. That the victims of the Aggravated Murder were witnesses to an offense who were purposely killed to prevent the victim's testimony in any criminal proceeding. R.C. 2929.04(A)(8).

96

(Emphasis added.) Thus, Obermiller is correct that this part of the sentencing opinion identifies all three remaining specifications as applicable to both murders.

{¶ 115} However, the record considered as a whole—in particular the panel's announcement of its sentencing decision from the bench near the end of the sentencing hearing and also the entirety of the sentencing opinion—makes clear that the panel did not apply the R.C. 2929.04(A)(7) felony-murder specification when it sentenced Obermiller for Donald's murder. Thus, Obermiller is incorrect when he contends that "[t]he court's improper weighing of the aggravating circumstances tipped the scale in favor of death for the aggravated murder of Donald Schneider."

{¶ 116} In any case, "whatever errors the trial court may have committed in weighing the aggravating circumstance[s] against any mitigating factors" will be remedied by this court's "careful independent reweighing" conducted later in this opinion. *State v. Lott*, 51 Ohio St.3d 160, 170, 555 N.E.2d 293 (1990), citing *Clemons v. Mississippi*, 494 U.S. 738, 748, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).

*Obermiller*, 147 Ohio St. 3d at 198-99.

Obermiller asserts that the state court's decision was contrary to Supreme Court precedent, because the Court overruled *Clemons v. Mississippi*, 494 U.S. 738 (1990), upon which the state court relied, in *Hurst v. Florida*, 577 U.S. 92 (2016).  (Doc. 58 at 75-76.)  This Court disagrees.

In *Ring v. Arizona*, 536 U.S. 584 (2002), the Supreme Court held that capital defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment[,]" and in particular, the finding of an aggravating circumstance. *Id*. at 589. Then in *Hurst*, the Court applied *Ring* and held that Florida's capital sentencing scheme impermissibly allowed "a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty." *Hurst*, 577 U.S. at 102. Neither of these cases involved a capital trial where, as here, the defendant waived his right to a jury trial and was convicted and sentenced by a three-judge panel.

Recently, moreover, in *McKinney v. Arizona*, 589 U.S. 139 (2020), the Court reaffirmed its holding in *Clemons v. Mississippi* that "'the Federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined

aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review.'" *Id.* at 143-45 (quoting *Clemons*, 494 U.S. at 741) (explicitly stating that "*Ring* and *Hurst* did not overrule *Clemons* so as to prohibit appellate reweighing of aggravating and mitigating circumstances"). As Ohio's high court held here, therefore, its independent review of Obermiller's sentence cured the trial court's sentencing error. Furthermore, the Supreme Court clarified in *McKinney* that *Hurst* does not apply retroactively on collateral review, as Obermiller urges the Court to do here. *Id.* at 708 (citing *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004)).

*Hurst*, therefore, has no bearing on the constitutionality of the Ohio Supreme Court's independent reweighing of Obermiller's sentence to cure the trial court's errors in its sentencing opinion. The Ohio court's decision did not contravene or unreasonably apply Supreme Court precedent, and this claim fails.

### B. Non-statutory Aggravating Circumstances

The Ohio Supreme Court also addressed the merits of Obermiller's claim regarding non-statutory aggravating circumstances on direct review, stating:

{¶ 117} Obermiller argues that the panel improperly considered nonstatutory aggravating circumstances developed through its examination of Gina Mikluscak. Specifically, he contends that "[t]he transcript in this case is replete with instances of the three judge panel pressing witnesses to testify to improper nonstatutory aggravating circumstances." Obermiller reasons that because the panel members questioned Mikluscak about these matters, "it must be concluded they believed this information was relevant and they considered it in their sentencing decision."

{¶ 118} The panel recalled Mikluscak as a court's witness and asked her many questions, including about her view of Obermiller's mental health. Defense counsel objected, but the panel overruled the objection and ultimately elicited testimony regarding Mikluscak's observations of Obermiller's mental health. Responding to other questions from the panel members, Mikluscak also detailed how Obermiller had beaten her, explained that he was prone to fits of anger, stated that he was in good physical shape (as opposed to Donald Schneider, who was not a large or powerful man), and testified regarding various other matters.

98

{¶ 119} Obermiller's assertion that because the panel questioned Mikluscak about these issues, the panel must have relied upon nonstatutory aggravating circumstances is flawed. The sentencing opinion reveals that the only aggravating circumstances on which the panel relied were the specifications left after merger: (1) course of conduct, (2) witness murder, and (3) murder during the rape of Candace Schneider. And "[w]hen a court correctly identifies the aggravating circumstances in its sentencing opinion, we will presume that the court relied only on those circumstances and not on nonstatutory aggravating circumstances." *State v. Clemons*, 82 Ohio St.3d 438, 447, 696 N.E.2d 1009 (1998), citing *State v. Hill*, 73 Ohio St.3d 433, 441, 653 N.E.2d 271 (1995).

{¶ 120} Obermiller's reliance on *State v. Davis*, 38 Ohio St.3d 361, 528 N.E.2d 925 (1988), to support his argument is misplaced. Unlike the sentencing opinion in this case, the trial court's sentencing opinion in *Davis* expressly listed five aggravating circumstances that the court considered, four of which were nonstatutory. *Id*. at 372, 528 N.E.2d 925. We vacated Davis's death sentence, holding that our independent reweighing could not cure the error "because we cannot know if the result of the weighing process by the three-judge panel would have been different had the impermissible aggravating circumstances not been present." *Id*.

{¶ 121} Here, in contrast, the three-judge panel identified only the applicable statutory aggravating circumstances in its sentencing opinion and listed no improper nonstatutory aggravating circumstances. Thus, Obermiller has not rebutted the presumption that the court relied only upon the aggravating circumstances it identified.

*Obermiller*, 147 Ohio St. 3d at 199-200.

Obermiller does not allege that the state court's decision was based on any unreasonable determination of fact or that the court contravened or misapplied Supreme Court precedent.  (*See* Doc. 58 at 75-76.)  And, as noted above, trial judges are presumed to know the law and to apply it correctly in the case before them, which Obermiller has not rebutted.  The state court reasonably determined that the trial court listed no improper non-statutory aggravating circumstances in its sentencing opinion, and Obermiller's thirteenth ground for relief lacks merit.

## XII.  Fourteenth Ground for Relief:  *Ineffective Assistance of Appellate Counsel*

Obermiller claims, for his fourteenth ground for relief, that his appellate counsel provided constitutionally ineffective assistance by failing to raise the following claims on direct appeal:  (1) trial counsel failed to inform him that by waiving his right to a jury trial his chance of acquittal

were "significantly higher" because one juror could vote against a death sentence; (2) the State failed to prove his guilt beyond a reasonable doubt; (3) the three-judge panel "took on the role of prosecutor" in his trial; (4) the trial court should have appointed independent counsel to present mitigation evidence; and (5) trial counsel committed "multiple errors that were never raised at trial" and appellate counsel never raised. (Doc. 58 at 78-79.) He raised these claims in a reopening application to the Ohio Supreme Court, which summarily denied them. (Doc. 30-1 at 961.)

A criminal defendant is entitled to effective assistance of counsel in his or her first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Obermiller, therefore, must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *Strickland*, 466 U.S. at 687.

Appellants have no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

Obermiller argues that AEDPA deference does not apply to these claims and he is entitled to de novo review because the state court did not perform a "real review" of the claims. (Doc. 58 at 77.) As noted above, however, the Supreme Court has held that "[w]hen a federal claim has

been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (applying presumption to state-court summary dispositions).   Obermiller has not offered any argument to overcome this presumption, nor can this Court find any.

This Court further concludes that the state court's decision rejecting these claims was reasonable, as each of the underlying claims lack merit.  As to the first claim that Obermiller's jury waiver was constitutionally invalid because the three-judge panel did not inform him that one juror could prevent a death sentence, as Respondent notes, the panel in fact specifically informed Obermiller during its extensive colloquy with him regarding his waiver that a jury verdict of guilty or recommendation of death sentence must be unanimous.  (Doc. 17-1 (Trial Tr.) at 243-44.)  In addition, the Sixth Circuit has made clear that there is no constitutional requirement for a trial court to conduct any colloquy with a defendant before a jury waiver, or, more specifically, that a defendant must understand that a jury verdict must be unanimous before waiving a jury trial.  *See Sowell v. Bradshaw*, 372 F.3d 821, 832-34 (6th Cir. 2004).

Obermiller's claim that the panel's request for additional evidence after the State rested its case "demonstrates that the State had not proven its case" also lacks merit.  (Doc. 58 at 78.)  The Court rejects the premise of this argument; the panel's request did not create any such assumption about the weight of the evidence presented by the State.  Indeed, as Respondent correctly points out, Obermiller plead guilty to all charges against him, and the Ohio Supreme Court reasonably found the evidence of his guilt presented by the prosecution "overwhelming." *Obermiller*, 147 Ohio St. 3d at 194.

Obermiller's claim that he was denied due process "when the three-judge panel took on the role of prosecutor in his trial" by requesting additional evidence and questioning the additional witnesses is similarly weak.  (*See* Doc. 58 at 78.)  He fails to provide any legal authority for the proposition that the trial court's conduct was constitutionally prohibited.

Obermiller also fails to furnish any legal authority for his claim that the trial court should have appointed independent counsel once he waived his right to present mitigation evidence.  (*See id.*)

Finally, this Court already has rejected Obermiller's claims that counsel should have filed a motion to suppress his cell phone records and improperly disclosed privileged communications with him.  *See supra* Section VI(B). There is no prejudice, therefore, resulting from appellate counsel's failure to raise this claim on direct appeal in state court.

Obermiller's fourteenth ground for relief, therefore, is denied.

## XIII. Fifteenth Ground for Relief:  *Cumulative Error*

Obermiller asserts in his fifteenth ground for relief that cumulative error at his trial violated his constitutional rights.  (Doc. 44 at 151-54.)  As Respondent argues, the Sixth Circuit repeatedly has held that a claim of cumulative trial error is not cognizable on federal habeas review.  *See, e.g., Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.").  This ground for relief, therefore, is denied as non-cognizable.

## XIV. Seventeenth and Eighteenth Grounds for Relief: *Constitutionality of the Death Penalty*

In his seventeenth and eighteenth grounds for relief, Obermiller challenges Ohio's death penalty scheme as unconstitutional for numerous reasons, including that the statutory sentencing scheme:  (1) is arbitrary and unequal (Ground17); (2) results in unreliable sentencing procedures

(Ground17); (3) includes an invalid aggravating circumstance (Ground 17); (4) results in a mandatory death penalty and fails to require an appropriateness analysis (Ground17); (5) is the subject of criticism and recommendations of the Joint Task Force to Review the Administration of Ohio's Death Penalty (Ground17); and (6) violates international law and treaties (Ground 18). (Doc. 44 at 156-77.)[12]   Respondent argues that the state courts adjudicated these claims on the merits and reasonably found them meritless.  (Doc. 47 at 87-88.)

*Sub-Claims (1), (2), and (6)*.  The Ohio Supreme Court on direct appeal rejected sub-claims (1), (2) and (6), as listed above, on the merits, noting that it had "previously considered and squarely rejected each of Obermiller's constitutional claims' and had "also held that Ohio's death-penalty statutes do not violate international law or treaties."  *Obermiller*, 147 Ohio St. 3d at 197-98 (citing *State v. Thompson*, 141 Ohio St. 3d 254 (Ohio 2014)).  Obermiller raised those claims again on post-conviction, resulting in the last court to review the claims, the appellate court, asserting the res judicata bar and also rejecting the challenges on the basis of Ohio Supreme Court precedent.  *Obermiller*, 2019 WL 1502500, at *5-6.

As Respondent notes, the state court's rejection of these claims also is supported by strong federal precedent. The Supreme Court has "time and again reaffirmed that capital punishment is not *per se* unconstitutional."  *Glossip v. Gross*, 576 U.S. 863, 881 (2015); *see also Gregg v. Georgia*, 428 U.S. 153, 177 (1976).   And the Sixth Circuit repeatedly has upheld the

---

[12] Obermiller also argues in Ground 17 that his sentence is unconstitutional as applied to him due to his strong mitigating factors.  (Doc. 44 at 157-61.)  The Court addressed this issue above, along with Ground 13, which also relates to sentencing.  *See supra* Section XI.  Furthermore, the Supreme Court has explained that the Constitution requires only that "the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence." *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998). (internal citations omitted). The relative weight and significance assigned to the mitigating circumstances is within its discretion. *Id.*

constitutionality of Ohio's death-penalty scheme in particular, rejecting many of the claims Obermiller asserts here. *See Beuke v. Houk*, 537 F.3d 618, 652-53 (6th Cir. 2008) ("Beuke next challenges the constitutionality of Ohio's death penalty scheme. His arguments are entirely meritless and have been rejected by this court on numerous occasions. We therefore will afford them minimal attention."); *Cooey v. Strickland*, 604 F.3d 939, 944 (6th Cir. 2010); *Cooey v. Coyle*, 289 F.3d 882, 928 (6th Cir. 2002); *Buell v. Mitchell*, 274 F.3d 337, 367-76 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000) *Jamison v. Collins*, 100 F. Supp. 2d 647, 759-67 (S.D. Ohio 2000). These claims, therefore, lack merit.

*Sub-Claims (3) through (5).* A review of Obermiller's state-court pleadings both on direct appeal and post-conviction review shows that he did not raise in state courts sub-claims (3) through (5), as listed above. (*See* Doc. 16-1 at 594-600 (Ohio Sup. Ct. Merit Brf.); Doc. 16-7 at 192-211 (Ohio App. Ct. Merit Brf.).) These claims, therefore, are procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Respondent did not assert the defense, however, and it is therefore waived. *See, e.g., Trest v. Cain*, 522 U.S. 87, 89 (1997) (quoting *Gray v. Netherland*, 518 U.S. 152, 166 (1996)) ("procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter'"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) ("The state may waive a defense," including procedural default, "by not asserting it.").

The Court notes, however, that these claims also have been repeatedly rejected by federal courts and they lack merit. *See, e.g., Saffle v. Parks*, 494 U.S. 484, 490 (1990), and *California v. Brown*, 479 U.S. 538, 539 (1987) (regarding lack of mercy option or appropriateness analysis); *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (regarding aggravating circumstance under

Ohio Rev. Code § 2929.04(A)(7)); *Roberts v. Baldauf*, 2023 WL 5229816, at *65-66 (N.D. Ohio Aug. 15, 2023) (regarding Ohio joint task force).

Obermiller's seventeenth and eighteenth grounds for relief, therefore, are without merit.

## CERTIFICATE OF APPEALABILITY ANALYSIS

The Court must now determine whether to grant a Certificate of Appealability ("COA") for any of Obermiler's grounds for relief.  The Sixth Circuit has held that neither a blanket grant nor a blanket denial of a COA is an appropriate means by which to conclude a capital habeas case as it "undermine[s] the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit the close attention of counsel and this court from those claims that have little or no viability." *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001); *see also Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001) (remanding motion for certificate of appealability for district court's analysis of claims).

Habeas courts are guided in their consideration of whether to grant a COA by 28 U.S.C. § 2253, which provides in relevant part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .

> C. A certificate of appealability may issue under paragraph (12) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253.  This language is identical to the requirements set forth in the pre-AEDPA statutes, requiring the habeas petitioner to obtain a Certificate of Probable Cause.  The sole difference between the pre- and post-AEDPA statutes is that the petitioner must now demonstrate he was denied a *constitutional*, rather than federal, right.  *Slack v. McDaniel*, 529 U.S. 473, 483-

04 (2000) (interpreting the significance of the revision between the pre- and post-AEDPA versions of that statute).

Furthermore, if a habeas claim is not procedurally defaulted, then the court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id*. at 484.  A more complicated analysis is required, however, when assessing whether to grant a COA for a claim the district court has determined is procedurally defaulted.  In those instances, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

After taking the above standards into consideration, the Court finds as follows:

The Court will not issue a COA for grounds for relief:  Three, Four, Seven, Eight, Ten through Fourteen, and Sixteen through Eighteen.  No jurist of reason would debate the Court's conclusions on these claims.

In addition, no COA will issue for grounds for relief:  Five, Six, and Fifteen, because they are not cognizable on federal habeas review.

The Court will issue a COA for Obermiller's grounds for relief:  One, relating to Obermiller's right to represent himself; Two, relating to Obermiller's competence to enter guilty pleas and waive his right to a jury trial; and Nine, relating to his competence to waive his right to present mitigation evidence at trial.  A reasonable jurist could debate the Court's conclusions regarding these claims.

## CONCLUSION

106

For the foregoing reasons, this Court denies Obermiller's Amended Petition for Writ of Habeas Corpus (Doc. 44).  The Court further certifies that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could be taken in good faith as to the first, second, and ninth grounds for relief, and the Court issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b) as to those claims only.  As to all remaining grounds, the Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.


Dated: September 30, 2024                    */s/ John R. Adams*
                                        JOHN R. ADAMS
                                        UNITED STATES DISTRICT JUDGE